PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LEE O. WILSON, JR.,
              *Plaintiff-Appellant,*

v.

GENE JOHNSON, Director of
Department of Corrections; DORIS
EWING, Court and Legal Supervisor;          No. 07-6347
EDWARD MEEKS, Superintendent
Cold Springs Work Center,
              *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:07-cv-00165-LMB)

Argued: March 18, 2008

Decided: July 25, 2008

Before MICHAEL and GREGORY, Circuit Judges, and
David R. HANSEN, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

Reversed and remanded by published opinion. Judge Gregory wrote
the opinion, in which Judge Michael joined. Senior Judge Hansen
wrote a dissenting opinion.

## COUNSEL

**ARGUED**: Katherine Crawford, DUKE UNIVERSITY SCHOOL
OF LAW, Durham, North Carolina, for Appellant. Stephen R.

McCullough, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Erwin Chemerinsky, James E. Coleman, Jr.; Students Sachin Bansal, Virginia Duke, Catherine Tucker, Kish Vinayagamoorthy, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant. Robert F. McDonnell, Attorney General of Virginia, William E. Thro, State Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

---

**OPINION**

GREGORY, Circuit Judge:

The Appellant, Lee O. Wilson, Jr., ("Wilson") appeals the district court's decision to dismiss his 42 U.S.C. § 1983[1] action against the Virginia Department of Corrections. Wilson claims that he is entitled to monetary damages for unconstitutional imprisonment because Virginia improperly extended the length of his prison sentence. The district court, citing to the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), dismissed Wilson's wrongful incarceration claim *sua sponte* stating that a "§ 1983 damages claim for unconstitutional imprisonment is not appropriate unless and until plaintiff's conviction or sentence 'has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.'" (J.A. 14.) This mandate is referred to as the "favorable termination" requirement.

Wilson contends that his § 1983 action is proper because success on that claim will not impugn his underlying conviction or sentence.

---

[1]Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Assuming, as we must, that Wilson's well-pleaded allegations are true, we agree that his claim is viable and as such, the district court's decision is reversed and remanded.

I.

Wilson was arrested on March 24, 2005, for grand larceny of a motor vehicle. On July 26, 2005, he pled guilty to the lesser charge of being an accessory after the fact. Consistent with Wilson's plea agreement, the Virginia state court sentenced him to twelve months imprisonment, six months of which was suspended due to time served. According to the Virginia Department of Corrections' ("VDOC") Uniform Commitment Report, Wilson's release date was April 21, 2006. (J.A. 6.) However, on March 15, 2006, the VDOC changed Wilson's release date to July 17, 2006. Wilson filed grievances with the prison administration disputing his additional imprisonment. The VDOC did not initiate any formal administrative proceedings to resolve Wilson's complaint. After Wilson was released from prison,[2] he sued, seeking monetary damages of $105,000 for wrongful imprisonment. The district court dismissed Wilson's claim without prejudice, holding that *Heck*'s favorable termination requirement barred his § 1983 claim and stating that Wilson "may resubmit his claims to this Court in a [habeas petition]." (J.A. 15.) Wilson appeals.

---

[2]After his release, Wilson was imprisoned again on an unrelated charge. During this imprisonment, Wilson filed this § 1983 claim along with a habeas claim. In the habeas petition, Wilson argued, *inter alia*, that the VDOC improperly extended his accessory after the fact sentence. The Virginia Circuit Court dismissed Wilson's habeas petition, finding that the VDOC properly calculated Wilson's sentence. The Virginia Supreme Court affirmed the trial court's decision. The VDOC argued in a motion to stay prior to oral argument, and in a motion to dismiss after oral argument, that the Virginia Circuit Court's decision resolved the underlying factual issue in this case, thus mooting Wilson's claim. Because the issue before us is limited to the legal question of whether Wilson's § 1983 claim is cognizable, we leave the issue of whether the Virginia Circuit Court's decision moots Wilson's claim for the district court to determine on remand. As such, the VDOC's motion to dismiss is denied.

## II.

The VDOC contends that Wilson's § 1983 claim is not cognizable because: (1) Wilson failed to satisfy *Heck*'s favorable termination requirement prior to filing his claim, and (2) even if *Heck* did not bar Wilson's claim, because the VDOC properly calculated his sentence, Wilson's claim is moot.[3] Wilson argues that a § 1983 action is the proper vehicle to bring his wrongful imprisonment claim because a habeas action would have been inappropriate as he does not seek release from custody. Thus, whether Wilson's § 1983 claim for wrongful imprisonment, filed after his sentence expired, is cognizable, is the sole issue before this Court. We review the district court's decision to dismiss Wilson's claim due to lack of subject matter jurisdiction, a question of law, de novo, *see e.g.*, *Church v. Attorney General of Com. of Va.*, 125 F.3d 210, 215 n. 5 (4th Cir. 1997), taking all of his allegations "in the light most favorable to [him]." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citation omitted).

Although the convergence of habeas and § 1983 actions has been addressed by the Supreme Court on several occasions, as the VDOC admits, it has sent "mixed signals" as to when an inmate or former inmate can pursue a § 1983 claim. (Appellee's Br. 4.) In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), a group of state prisoners filed a § 1983 action alleging that the New York State Department of Correctional Services' denial of good-time credits violated their constitutional right to due process. The prisoners sought an injunction to force the prison to restore the credits, a remedy which would have reduced the prisoners' sentences. Despite the "literal applicability" of § 1983, the Supreme Court affirmed the district court's dismissal of the claim because the prisoners' "challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489. Because the plaintiffs "sought no [monetary] damages, but only equitable relief-restoration of their good-time credits," *id.* at 494, the Supreme Court expressly limited its holding to the equitable relief sought by the prisoners.

---

[3]*See* note 2, *supra.*

Subsequently, in *Wolff v. McDonnell*, 418 U.S. 539 (1974), an inmate filed a § 1983 class action on behalf of himself and other inmates, alleging *inter alia*, that the disciplinary proceedings at the Nebraska Penal and Correctional Complex violated their due process rights. Like the plaintiffs in *Preiser*, the prisoners complained that the prison had improperly denied them good-time credits and sought injunctive relief. The *Wolff* inmates, however, also sought damages. In holding that *Preiser* precluded injunctive relief—i.e., the restoration of good-time credits, the Supreme Court confirmed the propriety of the plaintiffs' § 1983 claim:

> habeas corpus is not an appropriate or available remedy for damages claims, which, if not frivolous and of sufficient substance to invoke the jurisdiction of the federal court, could be pressed under § 1983 along with suits challenging the conditions of confinement rather than the fact or length of custody.

*Id.* at 554. Thus, the Supreme Court concluded that the district court erred by not determining "the validity of the procedures employed for imposing sanctions, including loss of good . . . [because] a declaratory judgment as a predicate to a damages award would not be barred by *Preiser*." *Id.* at 554-55.

Two decades after *Wolff*, the Supreme Court, in *Heck*, considered a prisoner's § 1983 claim seeking monetary damages from the state because (1) state officers participated in an "unlawful, unreasonable, and arbitrary investigation leading to [his] arrest," (2) state officers "knowingly destroyed" exculpatory evidence, and (3) "an illegal and unlawful voice identification procedure" was relied upon at trial. *Heck*, 512 U.S. at 479 (internal quotation marks omitted). Recognizing that *Preiser* provided an "unreliable, if not an unintelligible, guide," *id.* at 482, as to whether a § 1983 claim for monetary damages is proper when it fails to challenge the "lawfulness of conviction or confinement," *id.* at 483, and concluding that *Wolff* "recognized a § 1983 claim for using the wrong procedures, not for reaching the wrong result (i.e., denying good-time credits)," *id.* at 482-483, the Court analyzed the issue as a matter of first impression. After reiterating that § 1983 claims, unlike petitions for habeas corpus, do not require administrative exhaustion, the Court held that when a plain-

tiff's claims challenge "the lawfulness of conviction or confinement," *id.* at 483, they are simply not "cognizable as § 1983 claims" *id.*, because:

> [w]e think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that **necessarily require** the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486 (emphasis added). *Heck*'s holding precludes a prisoner from a collateral attack that may result in two inconsistent results—for example, a valid criminal conviction and a valid civil judgment under § 1983 for monetary damages due to unconstitutional conviction or imprisonment.[4] Although not essential to its holding, the Supreme Court extended its analysis a step further by concluding that "the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id.* at 489 n. 10.

Justice Souter's concurrence in *Heck*, joined by three Justices, recognized that the majority opinion could be interpreted to "risk the rights of those outside the intersection of § 1983 and the habeas statute, individuals not 'in custody' for habeas purposes," *id.* at 500, thus preventing them from accessing a federal forum.

> If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state rul-

---

[4]An additional reason for the rule is to preclude undue federal interference with states' administration of justice.

ing. The reason, of course, is that individuals not in custody cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

*Id.* (Souter, J., concurring) (internal quotation marks omitted). Absent a statutory edict to the contrary or a restriction within the common law, the reach of § 1983 should not be compromised. Indeed, the Court has given "full effect [to the language of § 1983 by] recognizing that § 1983 provides a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Id.* at 502 (internal quotation marks and citations omitted). Thus, we "[sh]ould not cast doubt on the ability of an individual unaffected by the habeas statute to take advantage of the broad reach of § 1983." *Id.* at 503.

*Heck* and its predecessors limited our inquiry to whether a prisoner's § 1983 action, "even if successful," *id.* at 487, would compromise the validity of his underlying sentence. Four years later, however, five members of the Supreme Court found *Heck*'s "favorable termination" requirement inapplicable to a released inmate's § 1983 claim, since this was the only avenue by which he could access a federal forum. *See Spencer v. Kemna*, 523 U.S. 1 (1998). In *Spencer*, the defendant filed a federal habeas claim averring that his due process rights were violated because his parole was improperly revoked. The district court dismissed the claim as moot because the defendant was released from prison before the district court decided his habeas claim. The majority opinion, written by Justice Scalia, who also authored the Court's opinion in *Heck*, affirmed the district court's decision.

Justice Souter, joined by three other colleagues (O'Connor, Ginsburg,[5] and Breyer, JJ.), concurred with the reasoning of the majority

---

[5]Justice Ginsburg, in addition to joining Justice Souter's concurrence, wrote a separate concurrence in which she stated, "I have come to agree with Justice SOUTER's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's ('broad reach.'" *Id.* at 21-22 (emphasis in original).

opinion, but more importantly, articulated an additional reason for why the correct result was reached:

> Now, as then, we are forced to recognize that any application of the favorable-termination requirement to § 1983 suits brought by plaintiffs not in custody would produce a patent anomaly: a given claim for relief from unconstitutional injury would be placed beyond the scope of § 1983 if brought by a convict free of custody (as, in this case, following service of a full term of imprisonment), when exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas.

> The better view, then, is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy.

*Id.* at 20-21. Justice Stevens dissented, agreeing with the four concurring judges that "[g]iven the Court's holding that [Spencer] does not have a remedy under the habeas statute, it is perfectly clear, as Justice SOUTER explains, that he may bring an action under 42 U.S.C. § 1983." *Id.* at 25 n. 8 (emphasis in original).

Both parties readily recognize that the circuits are split on this issue. Four circuits regard the five justice plurality in *Spencer* as dicta, and continue to interpret *Heck* as barring individuals from filing virtually all § 1983 claims unless the favorable termination requirement is met.[6] On the other hand, five circuits have held that the *Spencer* plurality's view allows a plaintiff to obtain relief under § 1983

---

[6]*See e.g.*, *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998); *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007); and *Fuchs v. Mercer County*, 260 Fed. Appx. 472, 474 (3d Cir. 2008) but cf. *Mendoza v. Meisel*, 270 Fed. Appx. 105, 107 (3d Cir. 2008) (holding that "*Heck* does not bar a § 1983 claim where the plaintiff is unable to challenge his conditions of confinement through a petition for federal habeas corpus.").

when it is no longer possible to meet the favorable termination requirement via a habeas action.[7]

As evidenced by the circuit split, the Supreme Court has yet to conclusively decide if a former inmate can file a § 1983 claim when his habeas avenue to federal court has been foreclosed. *See Muhammad v. Close*, 540 U.S. 749, 752 n. 2 (4th Cir. 2004) (recognizing, without deciding, that "[m]embers of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement.") Even the four judge concurrence in *Spencer* admitted that *Heck*'s "favorable-termination requirement [can be interpreted as] an element of any § 1983 action alleging unconstitutional conviction, whether or not leading to confinement and whether or not any confinement continued when the § 1983 action was filed." *Spencer*, 523 U.S. at 19.

Because Wilson's § 1983 claim seeks damages for past confinement, he does not fall squarely within the holdings of *Preiser*, *Wolff*, *Heck* or *Spencer*. Thus, while Supreme Court dicta in *Heck* and *Spencer* provides grist for circuits on both sides of this dilemma, we are left with no directly applicable precedent upon which to rely. We believe that the reasoning employed by the plurality in *Spencer* must prevail in a case, like Wilson's, where an individual would be left without any access to federal court if his § 1983 claim was barred. Indeed, the reach and intent of the habeas remedy would not be circumscribed by Wilson's § 1983 claim since he filed it after the expiration of his sentence.[8] Additionally, the sweeping breadth, "high

---

[7]*See e.g.*, *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999); *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *Nonette v. Small*, 316 F.3d 872, 874 (9th Cir. 2002); *Harden v. Patake*, 320 F.3d 1289, 1298 (11th Cir. 2003); and *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 603 (6th Cir. 2007) ("We are persuaded by the logic of those circuits that have held that *Heck's* favorable-termination requirement cannot be imposed against § 1983 plaintiffs who lack a habeas option for the vindication of their federal rights.").

[8]While Wilson concedes that filing a petition for habeas corpus was theoretically possible, he argues that complying with habeas' administrative exhaustion requirement during the additional confinement was impossible. The plaintiffs in *Preiser* and *Wolff* admittedly could have

purposes," and "unique[ness]" of § 1983 would be compromised in an unprincipled manner if it could not be applied here. *Wilson v. Garcia*, 471 U.S. 261, 272 (1985) (overruled on other grounds). If a prisoner could not, as a practical matter, seek habeas relief, and after release, was prevented from filing a § 1983 claim, § 1983's purpose of providing litigants with "a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nations," *id.* at 271-272 (internal quotation marks and citation omitted), would be severely imperiled. Barring Wilson's claim would leave him without access to any judicial forum in which to seek relief for his alleged wrongful imprisonment. Quite simply, we do not believe that a habeas ineligible former prisoner seeking redress for denial of his most precious right — freedom — should be left without access to a federal court.

### III.

For the foregoing reasons, we reverse the judgment of the district court and remand it for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

---

filed habeas claims. The fact that a prisoner could have filed a habeas is an issue in which courts have taken a keen interest. For example, in *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007), the Sixth Circuit held that "a § 1983 plaintiff is entitled to a *Heck* exception if the plaintiff was precluded as a matter of law from seeking habeas redress, but not entitled to such an exception if the plaintiff could have sought and obtained habeas review while still in prison but failed to do so." *Id.* at 601 (internal quotation marks and citation omitted). In *Powers*, the defendant only spent one day in jail, thus precluding him from filing a habeas petition as a practical matter. In *Leather v. Eyck*, 180 F.3d. 420, 424 (2d Cir. 1999), the Second Circuit held that *Heck* did not bar an individual's § 1983 claim alleging selective prosecution because his criminal sentence only involved paying a monetary fine.

HANSEN, Senior Circuit Judge, dissenting:

The *Heck*[1] favorable termination requirement is more than *dicta* that we, as an inferior court, can choose to ignore. Despite the views of the then-five sitting justices (now reduced to four on the current Court) expressed in *Spencer*,[2] the Supreme Court has not made any exceptions to the favorable termination requirement, and we are bound to enforce the requirement where it applies. Because Wilson's § 1983 claim "necessarily require[s] [Wilson] to prove the unlawfulness of his . . . confinement," *Heck*, 512 U.S. at 486, I would affirm the district court's dismissal. I therefore respectfully dissent.

This court's opinion properly articulates *Heck*'s holding that claims challenging the lawfulness of a defendant's conviction or his confinement are simply not cognizable under § 1983, and that the holding applies to "'§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.'" (*See supra* at 6, quoting *Heck*, 512 U.S. at 486 (emphasis omitted)). As articulated by the Supreme Court, that holding is unqualified. *See*, 512 U.S. 477 (1994). *Heck*, 512 U.S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned].") (footnote omitted). Rather than apply *Heck*'s holding to Wilson's § 1983 claim, this court's opinion then goes into a discussion of the views of five of the then-sitting justices espoused in *Spencer* about the effect of *Heck* on claimants who lack a justiciable habeas claim. *Spencer* involved the issue of whether a habeas claim became moot when the claimant was released from prison during the pendency of the habeas claim. *Spencer*, 523 U.S. at 3. Spencer had not filed a § 1983 claim. The only relevance § 1983 had to the *Spencer* case was Spencer's argument that his habeas claim should not be moot because *Heck* would preclude a later § 1983 claim, leaving him with no

---

[1] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[2] *Spencer v. Kemna*, 523 U.S. 1 (1998). Notably, this court's opinion elevates these views to that of a "plurality," (*supra* at 9), even though the Supreme Court itself has recognized them for what they are—the views of five justices in *Spencer* articulated in concurrences and a dissent, *see Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004).

recourse. The majority opinion, which was joined in full by the concurring opinions, rejected that argument, calling it "a great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available." *Id.* at 17. The discussion in Justice Souter's concurrence is nothing more than an expression of his views about whether the habeas claimant ought to be able to bring a § 1983 claim after his habeas claim became moot, an issue not then before the Court.

Our panel's opinion in this case then determines, without elaboration, that this case is not directly controlled by *Heck* "[b]ecause Wilson's claim seeks damages for past confinement." (*See supra* at 9.) That factual distinction notwithstanding, *Heck*'s holding, as well as its reasoning, clearly covers Wilson's § 1983 claim. In rejecting Justice Souter's suggestion that a § 1983 claim might lie where the claimant has no available habeas remedy, Justice Scalia, writing for the majority in *Heck*, reinforced the purpose behind its holding by stating that "the principle barring collateral attacks-a longstanding and deeply rooted feature of both the common law and our own jurisprudence-is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490 n.10. In my view, although *Heck* did not involve a claim based on past confinement, this statement is part of the core holding of *Heck* by which we are bound. *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) ("Absent a decision of the Court that explicitly overrules what we understand to be the holding of *Heck* [referring to the statement in footnote 10], however, we decline to depart from that rule."), *cert. denied*, 128 S. Ct. 1714 (2008); *Figueroa v. Rivera*, 147 F.3d 77, 81 & n.3 (1st Cir. 1998) (describing *Heck*'s "core holding" as requiring the "annulment of the underlying conviction" before a § 1983 claim could be brought in a case where habeas was unavailable due to the inmate's death). The importance of avoiding inconsistent results between a criminal conviction and sentence on the one hand and a civil constitutional tort action on the other is not lessened just because the defendant/claimant is no longer incarcerated.

The Supreme Court has reinforced the continuing validity of the *Heck* favorable termination requirement since *Spencer*. In explaining the intersection between habeas claims and § 1983 claims, the Supreme Court stated that "[s]ome cases are hybrids, with a prisoner

seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement." *Muhammad*, 540 U.S. at 750-51. In those hybrid situations, a defendant must still establish favorable termination of his underlying conviction or sentence before being allowed to bring a § 1983 claim seeking damages for the alleged deprivation of his constitutional rights. *Id.* at 751. This case fits squarely within the favorable termination requirement as expressly articulated by the Supreme Court thus far.

Even if the *views* of the members of the Supreme Court have changed, we are bound to follow the holdings of the Supreme Court until the Court *holds* differently. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal marks omitted)); *Mackall v. Angelone*, 131 F.3d 442, 445-49 (4th Cir. 1997) (en banc) (applying the rule from *Agostini* and following *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), even though the case at hand was factually distinguishable from *Finley* and the Supreme Court had noted, but not ruled on, the same factual distinction in *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)), *cert. denied*, 522 U.S. 1100 (1998). That Justice Ginsburg changed her mind between *Heck* and *Spencer* does not change the fact that we, as an inferior court, must continue to follow the holdings of the Supreme Court, not the views as espoused by the varying justices on issues not before the Court. *See United States v. Chase*, 466 F.3d 310, 315-16 (4th Cir. 2006) ("[Although] the overruling of *Almendarez-Torres* may be imminent, *see Shepard v. United States*, 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring in part and concurring in the judgment) ('*Almendarez-Torres* . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided.'), . . . until such overruling occurs, we must follow the decision when it controls." (citing *Agostini*)). We hold no charter to carve exceptions out of Supreme Court stone even if the winds of changing views have eroded it. Judicial restraint, as well as respect for prece-

dent and our place within the hierarchy of the federal judiciary, counsel that we must continue to apply the *Heck* favorable termination requirement where applicable, and without exception, until the Supreme Court tells us otherwise.

I respectfully dissent.