**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1986
_____

JAMES MARTIN DEEMER,
Appellant

v.

JEFFREY BEARD, Former Secretary, Pennsylvania Department of Corrections,
in his individual capacity; JOHN KERESTES, Superintendent of SCI-Mahanoy,
in his individual capacity; KRIS CALKINS, Records Officer, SCI-Mahanoy,
in her individual capacity; DON YOUNG, Records Officer, SCI-Mahanoy,
in his individual capacity; CATHERINE C. McVEY, Former Chairperson,
Pennsylvania Board of Probation and Parole, in her individual capacity; AMY
CLEWELL, Supervisor, Pennsylvania Board of Probation and Parole,
in her individual capacity; JOHN DOE NOS. 1 THROUGH X
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 1-12-cv-01143)
District Judge:  Honorable William W. Caldwell
_____

Argued:  January 16, 2014
_____

Before: RENDELL, ROTH and BARRY, <u>Circuit Judges</u>

(Opinion Filed:  February 27, 2014)
_____

Paul W. Hughes, Esq. (Argued)
Charles A. Rothfeld, Esq.
Jason R. LaFond, Esq.
Mayer Brown LLP
1999 K Street NW

Washington, DC 20006
        -AND-
Philip D. Lauer, Esq.
Lauer & Sletvold, P.C.
701 Washington Street
Easton, PA 18042

Counsel for Appellant

Alan M. Robinson, Esq. (Argued)
Pennsylvania Board of Probation and Parole
1101 S. Front Street, Suite 5100
Harrisburg, PA 17104

Counsel for Appellees

_____

OPINION
_____

BARRY, Circuit Judge

James Deemer, a former Pennsylvania inmate, filed this action under 42 U.S.C. § 1983, alleging that he was confined for a year and a day beyond the date on which his prison sentence should have expired. The District Court granted the defendants' motion to dismiss, finding that Deemer had failed to establish that his term of incarceration had been overturned, a prerequisite under *Heck v. Humphrey*, 512 U.S. 477 (1994), for challenging the duration of confinement in a § 1983 action. *Heck*, as authoritatively interpreted by our Court, bars Deemer's claim. We, therefore, will affirm.

## I.    BACKGROUND[1]

---

[1] The facts are drawn from the well-pleaded allegations in the complaint, which we assume to be true, and judicial and administrative orders that form part of the record

2

On June 25, 2007, Deemer was released on parole from a Pennsylvania prison, where he was serving a two-to-six year sentence for his conviction on two counts of retail theft. At the time of his release, he had 489 days remaining on his sentence.

One of the conditions of Deemer's parole was that he enroll in a residential drug treatment program. He failed to report to the program, however, and, two days after he was paroled, the Pennsylvania Board of Probation and Parole ("Board") declared him delinquent and issued a detainer warrant. He remained a fugitive until November 14, 2007, when he was arrested in Warren County, New Jersey and charged with a violation of New Jersey law. For the next 366 days until the Warren County charges were dismissed, he was detained by the County without bail.[2]

Following his detention in New Jersey, Deemer was returned to Pennsylvania and incarcerated at SCI Mahanoy. The Board conducted a parole violation hearing and, by written decision, determined that he had violated the terms of his parole and that his sentence would now expire on June 17, 2010. In arriving at that new maximum sentence date, the Board determined that 489 days, the entire amount remaining on his sentence as of his June 2007 release, had yet to be served. The Board rejected his contention that he should receive credit against his sentence for the 366 days of custody by Warren County. He was ultimately released from Pennsylvania prison on June 17, 2010.

of the case, documents which can be considered by us in reviewing a motion to dismiss. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 258 n.1, 260 (3d Cir. 2006).

[2] After the Warren County charges were dismissed, Deemer was transferred to Bergen County, New Jersey, and served time on an unrelated conviction for which parole had been revoked. The period of incarceration in Bergen County is not relevant to Deemer's § 1983 claim.

While he was incarcerated, Deemer challenged through several avenues the Board's decision to imprison him for a full 489 days. He filed a petition for administrative review with the Board that it denied on December 18, 2009. He then appealed the Board's decision to the Commonwealth Court of Pennsylvania. That appeal remained pending, without decision, as of the date of his release from SCI Mahanoy on June 17, 2010. Once Deemer was released, the Board filed an application with the Commonwealth Court to dismiss the appeal as moot, which the court granted on June 23, 2010. Two months earlier, in April 2010, Deemer filed in the Schuylkill County Court of Common Pleas a petition for a writ of habeas corpus based on the alleged illegality of his continued confinement. In addition, while in prison, he directed correspondence to various agencies and individuals, explaining that he had served his full sentence and asking to be released.

Deemer filed this § 1983 action for damages following his release. He alleged that the Board's failure to credit against his remaining sentence the 366 days spent in Warren County's custody had resulted in incarceration beyond the maximum sentence imposed by the court of conviction, in violation of both Pennsylvania law and the Eighth and Fourteenth Amendments of the U.S. Constitution. His complaint identified a number of individual defendants who, he alleged, were responsible for his unlawful incarceration. The defendants moved to dismiss.

The District Court granted the defendants' motion, relying on the Supreme Court's decision in *Heck v. Humphrey*. *Heck* holds that a plaintiff may not challenge the

4

constitutionality of his conviction or sentence in a § 1983 action unless he can demonstrate that the prior criminal proceeding terminated in his favor. Although Deemer had made previous attempts to overturn the Board's decision, none had yielded a favorable disposition. Therefore, he did not satisfy the mandate of *Heck* and the Court found that this action was barred. Moreover, the Court felt constrained by binding precedent from this Court to apply the *Heck* favorable termination rule even if to do so would effectively deny Deemer another forum in which to challenge the Board's decision, given that he was no longer in custody and could not pursue a habeas claim. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the Court's ruling on a motion to dismiss, and assess the sufficiency of the well-pleaded allegations in the complaint under the familiar plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206, 209-11 (3d Cir. 2009).

## III. ANALYSIS

Deemer argues that the District Court erred in applying the *Heck v. Humphrey* favorable termination bar to the facts of his case. He contends that *Heck*'s rule does not, and should not, apply to § 1983 plaintiffs who, like him, are no longer in custody and who, through no fault of their own, never had alternate access to the federal courts'

5

habeas corpus jurisdiction. In view of our existing precedent, we disagree.

In *Heck v. Humphrey*, the Supreme Court announced that a plaintiff cannot attack the validity of his conviction or sentence in a § 1983 damages action without proving that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."[3] 512 U.S. at 486-87. *Heck* determined that this requirement emanated from § 1983 itself. Recognizing that § 1983 creates a particular kind of liability for constitutional torts, the Court turned to common-law tort principles to inform its interpretation of the federal civil rights statute. It first concluded that the common-law tort of malicious prosecution "provides the closest analogy" to § 1983 claims for damages predicated on the unconstitutionality of a conviction or sentence. *Id.* at 484. That being so, § 1983 claims of this sort, like the common-law cause of action for malicious prosecution, require a showing that the prior criminal proceeding terminated in the plaintiff's favor. *Heck* went on to state that "the principle barring collateral attacks" on a conviction or sentence, which motivates the favorable termination requirement, "is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id.* at 490 n.10.

---

[3] Deemer does not dispute that his § 1983 claim, predicated as it is on the Board's alleged miscalculation of his remaining sentence, is an attack on the duration of his confinement otherwise subject to *Heck*'s favorable termination rule. *See Williams v. Consovoy*, 453 F.3d 173, 176-77 (3d Cir. 2006) (applying *Heck* to claim of unlawful detention based on parole board decision).

In a concurring opinion, Justice Souter endorsed the majority's favorable termination rule, but found that it applied only to those individuals in state custody, as they had access to federal habeas relief under 28 U.S.C. § 2254 and were required to first challenge their sentence or conviction through that mechanism. *Id.* at 498-500 (Souter, J., concurring). He explained that imposing a categorical favorable termination requirement would have the "untoward result" of denying any federal forum to claimants who were not in state custody and could not invoke federal habeas jurisdiction. *Id.* at 500.

Subsequently, in *Spencer v. Kemna*, 523 U.S. 1 (1998), five of the justices, in three concurring and dissenting opinions, adopted the reasoning of Justice Souter's concurrence in *Heck*. *Id.* at 19-21 (Souter, J., concurring, and joined by O'Connor, Ginsburg, and Breyer, JJ.); *id.* at 21 (Ginsburg, J., concurring); *id.* at 25 n.8 (Stevens, J., dissenting). Because the concurring and dissenting justices did not coalesce behind an authoritative majority opinion, however, it has remained an unsettled issue before the Supreme Court whether the "unavailability of habeas . . . may . . . dispense with the *Heck* requirement." *Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (per curiam).

The main dispute between the parties before us is in identifying the position staked out by this Court. Taking a cue from the five-justice *Spencer* plurality, seven courts of appeals have found that the *Heck* favorable termination rule does not apply to plaintiffs for whom federal habeas relief is unavailable, at least where the plaintiff is not responsible for failing to seek or limiting his own access to the habeas corpus remedy.

7

*See Burd v. Sessler*, 702 F.3d 429, 435 (7th Cir. 2012); *Cohen v. Longshore*, 621 F.3d 1311, 1315-17 (10th Cir. 2010); *Wilson v. Johnson*, 535 F.3d 262, 267-68 (4th Cir. 2008); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 602-03 (6th Cir. 2007); *Harden v. Pataki*, 320 F.3d 1289, 1298-99 (11th Cir. 2003); *Nonnette v. Small*, 316 F.3d 872, 876-77 (9th Cir. 2002); *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001).

We have not adopted this approach. We, along with three other courts of appeals, have declined to follow the concurring and dissenting opinions in *Spencer*, and have interpreted *Heck* to impose a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence. *See Williams*, 453 F.3d at 177-78; *Gilles v. Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005); *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007); *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (per curiam); *Figueroa v. Rivera*, 147 F.3d 77, 80-81 & n.3 (1st Cir. 1998); *see also Cohen*, 621 F.3d at 1315 (finding our Court has aligned itself with the First, Fifth, and Eighth Circuits on this question); *Powers*, 501 F.3d at 602 (same). Thus, our decisions in *Gilles v. Davis* and *Williams v. Consovoy* already resolved the issue raised in this case, concluding, as they did, that *Heck*'s favorable termination rule applies to all § 1983 plaintiffs, not just those in state custody.

In *Gilles*, one of the § 1983 claimants, Timothy Petit, was arrested for disorderly conduct after he videotaped an associate preaching controversial views on a college campus. Petit voluntarily entered into a court-supervised probation program and, after its successful completion, the charge was expunged from his criminal record. In the § 1983

8

action that he later filed, Petit argued that he had been engaged in protected First Amendment speech rather than disorderly conduct, a claim that would have invalidated his placement under court supervision. Because Petit's probation bore several features that were "not consistent with innocence," we found that participation in the program did not constitute a favorable termination of his criminal charge and we dismissed his suit pursuant to *Heck*. *Gilles*, 427 F.3d at 211.

In concluding that the claim was precluded, the *Gilles* Court did not mention Justice Souter's concurrence in *Heck* and did not so much as intimate that *Heck*'s favorable termination rule was anything less than a categorical requirement stemming from § 1983 itself. We acknowledged that the concurring and dissenting opinions in *Spencer* "question[ed] the applicability of *Heck*" to Petit's case, as he was not in state custody and "ha[d] no recourse under the habeas statute." *Id.* at 209-10. Yet, we determined, "these opinions do not affect our conclusion that *Heck* applies to Petit's claims." *Id.* at 210. We doubted that the pronouncements in *Spencer* by Justices Souter, Ginsburg, and Stevens undermined *Heck*, and, even if they did, we joined with the First and Fifth Circuits in leaving it to the Supreme Court to scale back or overrule *Heck*'s holding. *Id.* (citing *Randell*, 227 F.3d at 301-02; *Figueroa*, 147 F.3d at 81 n.3).

Less than a year later, in *Williams*, we again addressed *Heck*'s reach. In 1997, John Williams was arrested as a parole violator, his parole was revoked, and he was re-incarcerated. After his release, in 2001, Williams brought a § 1983 action challenging, among other things, the legality of his arrest and parole revocation. We affirmed the

9

dismissal of Williams' action for failure to comply with the *Heck* favorable termination rule and reiterated that *Heck* applied across the board, stating that "a § 1983 remedy is not available to a litigant[, like Williams,] to whom habeas relief is no longer available." *Williams*, 453 F.3d at 177. We again noted that the holding in *Heck* had not been undermined by the several, disparate opinions in *Spencer*, and specifically rejected the Second Circuit's position, in reliance on *Spencer*'s non-majority opinions, that § 1983 relief must be available where a federal habeas corpus remedy is not. *Id.* (rejecting the reasoning of *Huang*, 251 F.3d at 75).

Notably, in neither *Gilles* nor *Williams* did we find at all salient the reason why the § 1983 claimant could not access the federal courts' habeas corpus jurisdiction. We, therefore, see no cause to distinguish between the plaintiffs in those cases, who seem to have voluntarily relinquished the ability to launch a federal habeas challenge,[4] and Deemer, who arguably lacked access to federal habeas relief solely due to the short duration of his confinement.

*Gilles* and *Williams* dictate that, under *Heck*, any claimant, even if the door to federal habeas is shut and regardless of the reason why, must establish favorable termination of his underlying criminal proceeding before he can challenge his conviction

---

[4] Petit voluntarily "waive[d] his right to prove his innocence" by entering into Pennsylvania's pre-trial probationary program, *Gilles*, 427 F.3d at 209, and Williams sat on his habeas rights for three years while he was incarcerated, challenging the loss of parole only after he was released from custody, *see Williams*, 453 F.3d at 175-76 & n.1.

10

or sentence in a § 1983 action.  We are bound by that precedent.[5]  *See* 3d Cir. I.O.P. 9.1; *Mariana v. Fisher*, 338 F.3d 189, 201 (3d Cir. 2003).  The fact that a cobbled-together majority of the justices in *Spencer* endorsed a different course does not permit us to deviate from our authoritative interpretation of *Heck*.  If subsequent opinions of the Supreme Court undermine or supersede *Heck*, we leave it to that Court to declare so.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997); *Gilles*, 427 F.3d at 210.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.

---

[5] To the extent that certain non-precedential decisions by panels of this Court suggest that *Heck*'s favorable termination requirement is limited to individuals who had access to federal habeas relief or that the scope of the *Heck* requirement remains an open question within this Circuit, we find them unpersuasive.

11

*Deemer v. Beard, No. 13-1986*

RENDELL, J., concurring:

While I agree with the majority that our precedent dictates that we must reject James Deemer's argument, I believe that the principles that animated the Supreme Court's opinion in *Heck* should lead to a different result, were the Court to consider the issue anew in the fact pattern before us.

In *Heck*, the majority noted that the issue presented was at the intersection of the habeas corpus statute, 28 U.S.C. § 2254, and the civil rights statute, 42 U.S.C. § 1983. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994) ("This case lies at the intersection of the two most fertile sources of federal-court prisoner litigation - [] 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254. Both of these provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials, but they differ in their scope and operation.") A concern was expressed that permitting suits via § 1983 without the favorable termination of the conviction would lead to inconsistent results. *Id.* at 484-85. That is, an award of damages for wrongful incarceration would be inconsistent with the fact of the prisoner's 'lawful' incarceration.

However, these concerns disappear once the defendant is no longer incarcerated. Not only does the possibility of inconsistent results disappear, but as some of our sister courts of appeals have noted, it could be said that fairness mandates that a former prisoner, who no longer has habeas review available, should be permitted via § 1983 to seek recourse for alleged violations of his rights. *See infra Cohen v. Longshore*, 621 F.3d 1311, 1316-17 (10th Cir. 2010); *Wilson v. Johnson,* 535 F.3d 262, 268 (4th Cir.

1

2008); *Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 603 (6th Cir. 2007). Given the scope and history of § 1983 as designed to redress constitutional violations, I think that fairness is a persuasive consideration.

A judgment in Deemer's favor, post-release, would only vindicate his rights in the face of unlawful state action – serving the exact purpose of § 1983 – not create the inconsistent result of continued incarceration and a favorable civil judgment. Absent the availability of § 1983, a former prisoner is left with no recourse through no fault of his own. As Justice Ginsberg noted, such individuals "fit within § 1983's broad reach." *Spencer v. Kemna*, 523 U.S. 1, 21 (1998) (Ginsberg, J., concurring) (internal quotations omitted). Why should the former prisoner be denied even the opportunity for such vindication?

As the majority notes, reasonable minds differ as to the reach of *Heck*. *Compare Wilson*, 535 F.3d at 267 ("[W]e are left with no directly applicable precedent upon which to rely.") *to Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (*Heck* directly applicable as a bar to former prisoner's § 1983 action). I, for one, believe that it should not reach to deny Mr. Deemer the opportunity for vindication via § 1983. Even so, until the Supreme Court decides this issue, we will continue to hold that *Heck's* majority, and not the "cobbled-together" group of judges who have expressed concern regarding the denial of § 1983 relief for someone in Mr. Deemer's position, must dictate the fate of persons like Mr. Deemer. Thus, I concur in the result.

2