UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1494**

WENDELL GRIFFIN,

       Plaintiff - Appellant,

    v.

BALTIMORE POLICE DEPARTMENT; JERRY LANDSMAN; DONALD KINCAID;
EDWARD BROWN,

       Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J.  Frederick  Motz,  Senior  District
Judge.  (1:13-cv-03387-JFM)

Argued:  September 17, 2015      Decided:  October 27, 2015

Before WILKINSON, AGEE, and HARRIS, Circuit Judges.

Affirmed  by  published  opinion.  Judge  Wilkinson  wrote  the
opinion,  in  which Judge Agee and Judge Harris joined.  Judge
Harris wrote a separate concurring opinion.

**ARGUED**: Charles N. Curlett, Jr., LEVIN & CURLETT LLC, Baltimore,
Maryland, for Appellant.   Daniel C. Beck, BALTIMORE CITY LAW
DEPARTMENT, Baltimore, Maryland, for Appellees.  **ON BRIEF**: Sarah
F. Lacey,  LEVIN & CURLETT LLC,  Baltimore,  Maryland,  for
Appellant.   George A. Nilson, City Solicitor of Baltimore City,
Suzanne Sangree, Chief, Glenn Marrow, Deputy Chief, Police Legal
Affairs Division, BALTIMORE CITY LAW DEPARTMENT, Baltimore,
Maryland, for Appellees.

WILKINSON, Circuit Judge:

Plaintiff Wendell Griffin seeks damages for police and prosecution withholding of evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), during his 1982 murder trial. The district court dismissed his case, holding it barred by Heck v. Humphrey, which prohibits § 1983 claims for damages that would "necessarily imply the invalidity" of a plaintiff's prior conviction. 512 U.S. 477, 487 (1994). For the reasons that follow, we affirm.

I.

On March 8, 1982, Griffin was convicted by a jury in Baltimore City Circuit Court for the April 22, 1981 murder of James Williams Wise and also for a related weapons charge. He was sentenced to life in prison. The Maryland Court of Special Appeals affirmed Griffin's convictions on April 4, 1983, and the Maryland Court of Appeals denied Griffin's petition for certiorari on April 11, 1984.

Griffin filed a pro se petition for state post-conviction relief, but it was withdrawn without prejudice on February 23, 1993. He then filed another petition, this one claiming that he received ineffective assistance of counsel, on April 19, 1995. The Baltimore City Circuit Court denied this petition on December 13, 1996.

2

On October 31, 1997, over fifteen years after his conviction, Griffin sought federal habeas relief in the United States District Court for the District of Maryland. The petition was denied on June 11, 1998, and this court declined to issue a certificate of appealability. Griffin v. Sizer, 161 F.3d 2 (4th Cir. 1998).

Over a decade later, on June 10, 2010, Griffin filed a pro se petition seeking post-conviction DNA testing of certain evidence pursuant to Md. Code, Crim. Proc. § 8-201. In response to this petition, the court appointed Griffin counsel, who filed a Maryland Public Information Act request seeking records from the Baltimore City Police Department. These documents allegedly revealed that Baltimore City Police Department detectives withheld from the defense exculpatory evidence, including exculpatory photo-arrays, exculpatory witness statements, proof of a break in the chain of custody over keys found at the crime scene, and evidence that tended to inculpate another person.

On August 4, 2011, the Baltimore City Circuit Court conducted an evidentiary hearing to consider Griffin's arguments. It found that Maryland had conducted a reasonable search for evidence secured in connection with Griffin's case, and it indicated that it would address the question of whether any withholding of evidence was intentional at a later hearing.

On February 2, 2012, Griffin again moved for state post-conviction relief. Then, on May 23, 2012, the Baltimore City Circuit Court granted Griffin's unopposed motion to modify his sentence to time served. Griffin was placed on three years of unsupervised probation, but the probation was terminated early on December 19, 2012.

Griffin, no longer in custody, sued the Baltimore City Police Department and three of its former detectives for damages under 42 U.S.C. § 1983. The United States District Court for the District of Maryland, noting that Griffin had "ample opportunity to seek federal review . . . prior to his release from incarceration," J.A. 108, dismissed his claims pursuant to the bar set forth in Heck v. Humphrey. This appeal followed.

## II.

We shall briefly review at the outset the principles underlying Heck before proceeding to the core of Griffin's claim. In Heck, the Supreme Court identified two potential problems lying at the intersection of the major statutory schemes relevant to prisoner litigation: habeas corpus and § 1983. The first problem goes to consistency. If a § 1983 plaintiff could win damages premised on the wrongfulness of a still-valid conviction, there would be "two conflicting resolutions" of a single controversy. Heck, 512 U.S. at 484. All

4

things considered, it would be best not to have law at odds with itself.

The second problem goes to the proper observance of Congress's specified means of federal post-conviction review. Habeas corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release from confinement. Preiser v. Rodriguez 411 U.S. 475, 487-90 (1973). Congress has limited this remedy, moreover, by requiring habeas petitioners to exhaust their claims in state forums and by limiting a federal court's ability to review a state court's adjudication of the merits of a claim. See 28 U.S.C. § 2254. If, however, a § 1983 plaintiff could win damages premised on a still-valid conviction, then that plaintiff could circumvent these limitations and mount "a collateral attack on [a] conviction through the vehicle of a civil suit." Heck, 512 U.S. at 484.

The Supreme Court attempted to forestall these two problems by prohibiting § 1983 claims implicating issues more appropriately resolved via federal habeas corpus or state post-conviction relief. Specifically, the Court held that

> to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 485. Through what has become known as the "favorable termination requirement," Nelson v. Campbell, 541 U.S. 637, 646-47 (2004), the Court ensured that § 1983 litigation would not result in inconsistent judgments or retrials of old state convictions through pathways other than those delineated by Congress.

Heck itself makes clear, however, that § 1983 actions that do not "necessarily" imply the invalidity of a prior conviction "should be allowed to proceed, in the absence of some other bar to the suit." Heck, 512 at 487. The need to avoid inconsistent judgments and prevent litigants from evading the procedural requirements of federal habeas corpus is not present when a § 1983 claim would not actually undermine a valid conviction. In Skinner v. Switzer, for example, the Court held that Skinner's suit for DNA testing was cognizable under § 1983, because the testing would not "necessarily" undermine the validity of his conviction. 562 U.S. 521, 534 (2011). It might instead only incriminate him further. Id.

While § 1983 suits seeking DNA testing may proceed around the Heck bar, § 1983 actions based on Brady claims may not. Skinner itself makes this distinction clear. "Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a Brady claim, when successful postconviction, necessarily yields evidence undermining a

6

conviction: <u>Brady</u> evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." <u>Skinner</u>, 562 U.S. at 536; <u>see also</u> <u>Brady</u>, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material."). The Court's careful explanation of this distinction prevents us from allowing its decision in <u>Skinner</u> to "spill over to claims relying on <u>Brady</u>." <u>Skinner</u>, 562 U.S. at 536.

What we have here, then, are § 1983 claims predicated on alleged <u>Brady</u> violations which would, if proven, necessarily imply the invalidity of Griffin's convictions. And those convictions have not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." <u>Heck</u>, 512 U.S. at 487. Under <u>Heck</u>, therefore, they may not be collaterally attacked through § 1983 now.

That Griffin is no longer in custody does not change this result. The <u>Heck</u> bar is "not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." <u>Id.</u> at 490 n.10. This rule prevents would-be § 1983 plaintiffs from bringing suit even after they are released from custody and thus unable to challenge their conviction through a habeas petition. Were the rule otherwise, plaintiffs might simply wait

7

to file their § 1983 actions until after their sentences were served, and thereby transform § 1983 into a new font of federal post-conviction review.

Successful resolution of Griffin's § 1983 claims would necessarily undermine the validity of Griffin's prior convictions. Griffin's claims would appear therefore to fall within the core of the Heck bar.

## III.

Griffin argues, however, that he is not subject to Heck even though his claims would necessarily undermine his convictions. He points to Wilson v. Johnson, which recognizes an exception to the Heck bar in cases where a litigant "could not, as a practical matter, [have sought] habeas relief" while in custody. 535 F.3d 262, 268 (4th Cir. 2008). Griffin argues that he qualifies for this exception because he could not successfully pursue habeas relief while "deprived of the exculpatory evidence hidden by the police." Appellant's Op. Br. at 37. There are several problems with his position.

In Wilson, this Court considered a § 1983 claim for damages alleging that the State of Virginia improperly extended Wilson's sentence by approximately three months. Wilson, 535 F.3d at 263. Wilson's case presented a potential problem identified by Justice Souter in Heck: because federal habeas suits may be filed only by individuals who are "in custody," 28 U.S.C.

8

2254(a), petitioners with short sentences might find their claims moot before they could prosecute them. Without § 1983 as a backstop, these petitioners might lack access to federal courts altogether. See Heck, 512 U.S. at 500-02 (Souter, J., concurring); see also Spencer v. Kenma, 523 U.S. 1, 20-21, 21 n.* (1998) (Souter, J., concurring). After accepting Wilson's assertion that exhausting his claims prior to his release was impossible, see Wilson, 535 F.3d at 268 n.8, we held that his action was cognizable under § 1983, id. at 267-68. Had we held otherwise, Wilson would have been entirely "left without access to a federal court." Id. at 268.

We applied a similar rationale in Covey v. Assessor of Ohio County. There, Covey was sentenced to not less than one and not more than five years of home confinement. 777 F.3d 186, 191 (4th Cir. 2015). He brought suit under § 1983 later the next year, by which time his home confinement was complete. Id. at 198. We held that Heck did not bar Covey's claims "for purposes of the defendants' motions to dismiss," and that the district court should decide after discovery whether Covey was "unable to pursue habeas relief because of insufficient time or some other barrier." Id. In discussing Wilson's holding, moreover, we suggested that the Heck exception does not extend to just any petitioner who, by virtue of no longer being in custody, cannot seek habeas relief. Rather, the exception applies only if a

9

petitioner could not have "practicably sought habeas relief while in custody." Id. at 197 (citing Wilson, 535 F.3d at 267-68).

Together, Covey and Wilson delineate the Heck bar's narrow exception. A would-be plaintiff who is no longer in custody may bring a § 1983 claim undermining the validity of a prior conviction only if he lacked access to federal habeas corpus while in custody.[1]

Griffin did not lack access to habeas relief while in custody. While Wilson had only a few months to make a habeas claim, and while Covey had at most a little over a year, Griffin had three decades. And Griffin actually did bring a federal habeas petition during his time in custody. Although his petition was denied, the fact that he was able to file it demonstrates that the concern animating Wilson and Covey -- that a citizen unconstitutionally punished might lack an opportunity for federal redress if kept in custody for only a short period of time -- is absent in this case.

Griffin argues that he never had the opportunity to achieve meaningful habeas relief because evidence necessary to his case

---

[1] Access to federal habeas corpus comes part and parcel with the restrictions Congress has placed on invocations of the writ. A statute of limitations' expiration, for example, would not in this sense deprive a petitioner of access to the federal courts. By access we mean access to federal habeas corpus as provided under the enactments of Congress that apply to a petitioner during his time in custody.

remained in the hands of the Baltimore Police Department. Appellant's Op. Br. at 28, 39. But likelihood of success is not the equivalent of opportunity to seek relief. And even if it were, nothing in the record suggests that Griffin sought the relevant records (much less encountered resistance to their production) until he filed his Maryland Public Information Act request in 2010. That law, meanwhile, has been in effect since 1970. Maryland Public Information Act Manual, 1-1 (13th ed., Oct. 2014). Lack of information did not take away Griffin's opportunity for meaningful habeas relief.

While our precedent makes clear that lawful access to federal habeas corpus is the touchstone of our inquiry, Griffin's case is further undercut by the fact that he did eventually receive actual notice of possible official misconduct and still did not pursue additional federal habeas relief. In declining to except Brady claims from the rule in Heck v. Humphrey, Skinner, 562 U.S. at 536-37, the Supreme Court recognized that the adversary process does not as a rule require a potential respondent to give notice to a potential petitioner of every claim, meritorious or otherwise, that the petitioner may possess. Griffin knew of possible police misconduct by, at the latest, August 4, 2011, the date of his evidentiary hearing in the Baltimore City Circuit Court. His custody did not terminate until over sixteen months later, on December 19, 2012.

11

The habeas "in custody" requirement, moreover, applies only at the time of filing, not throughout the case. Carafas v. LaVallee, 391 U.S. 234, 238-39 (1968); Wolfe v. Clarke, 718 F.3d 277, 286 n.10 (4th Cir. 2013). Griffin would have had only to file his petition during those sixteen months. He did not do so.

In sum, Griffin has identified no impediment to habeas access warranting an expansion of the Heck exception. In fact, to dissolve the Heck bar for a damages suit some thirty years after a still-valid conviction for a plaintiff who not only could but did file a federal habeas petition would permit the Heck exception to swallow the rule.

IV.

It is important not to disassociate Griffin's case from the broader context of which it is part. The usual federal remedy for Griffin, as for all those who challenge unlawful state confinement, is habeas corpus. Congress has simultaneously provided and circumscribed this remedy so as to preserve the sensitive balance between state and federal courts. The most recent major habeas statute -- the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) -- was written with the "principles of comity, finality, and federalism" in mind. Williams v. Taylor, 529 U.S. 420, 436 (2000).

These concerns are not novel. The Supreme Court has long recognized the importance of "the relations existing, under our

12

system of government, between the judicial tribunals of the Union and of the States," and that "the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution." Ex parte Royall, 117 U.S. 241, 251 (1886). Indeed, "the trial of a criminal case in state court" has always been understood "as a decisive and portentous event," Wainwright v. Sykes, 433 U.S. 72, 90 (1977), and one which commands a decent measure of federal respect. Griffin's conviction, after all, is a state conviction, and it is one in which Maryland, the rendering jurisdiction, retains an interest.

Limits on federal habeas corpus recognize, moreover, that the states often already provide many avenues of post-conviction relief. Maryland, for example, allows certain offenders who are no longer in custody to challenge their convictions by means of an "independent, civil action" known as a "petition for writ of error coram nobis." Smith v. State, 100 A.3d 1204, 1206 (Md. App. 2014) (citing Skok v. State, 760 A.2d 647 (Md. 2000)). Maryland also permits convicted persons to file petitions for writs of actual innocence on the basis of newly discovered evidence. Md. Code, Crim. Proc. § 8-301. Additionally, the Maryland Constitution empowers the governor to issue an

13

executive pardon. Md. Const. art. II, § 20, cl. 1.[2] And the Maryland Board of Public Works may grant compensation to pardoned persons. Md. Code, State Fin. & Proc. § 10-501. Each of these forms of relief is in addition to Maryland's standard direct appeal and collateral review procedures. See Md. Code, Crim. Proc. § 7-101-09. Griffin may or may not qualify for any or all of these remedies; that is for Maryland to decide. But nothing prevents Maryland from creating new means of invalidating his convictions or paying him damages if it wishes to do so. Maryland is an "independent sovereign[] with plenary authority to make and enforce [its] own laws as long as [it] do[es] not infringe on federal constitutional guarantees." Danforth v. Minnesota, 552 U.S. 264, 280 (2008).

As the Supreme Court recently observed, federal habeas corpus "intrudes" on state sovereignty "to a degree matched by few [other] exercises of federal judicial authority." Harrington v. Richter, 562 U.S. 86, 103 (2011). This observation is not inapplicable to Brady claims like Griffin's, which can take a federal court deep into a state's criminal case, and which may not be amenable to a quick look-see. Whether alleged Brady

---

[2] Some courts have held that, while not strictly an "expungement by executive order," a pardon still suffices to lift the Heck bar. See, e.g., Wilson v. Lawrence Cty., Mo., 154 F.3d 757, 760-61 (8th Cir. 1998); Snyder v. City of Alexandria, 870 F. Supp. 672, 681 (E.D. Va 1994). That question is not before us, and we do not address it.

evidence was exculpatory might lend itself to a quick read, but whether it was material, another critical element of a Brady claim, cannot invariably be decided in a vacuum, but only by reviewing the total context of the state prosecution. Brady claims may thus involve an exhaustive exhumation of state proceedings, a process which in turn implicates the Supreme Court's concerns about premature intrusions upon the established principles of dual sovereignty. This intrusion, if brought in habeas corpus, is constitutionally and statutorily authorized. But collateral attacks are not to be undertaken with abandon or in a manner that disregards the conscientious efforts of state judges and juries both to provide and protect the safety of their citizens and to safeguard their precious rights. All of this counsels against accepting Griffin's invitation to turn § 1983 into some routine vehicle for challenging long-settled state convictions.

We close by noting that our decision sounds in procedure, not substance. We express no opinion on the actual merits of Griffin's Brady claims. Our holding is not meant to bar him from seeking a remedy for possible police misconduct. The remedy of habeas corpus was open to him in the past, and he may retain state remedies he can pursue in the future. We hold only that the vehicle he has presently chosen is not, at least not now, an appropriate one under Supreme Court and circuit precedent.

15

Should his convictions at some point be invalidated, he might again attempt a § 1983 suit free of any Heck bar. Until then, however, we must affirm the judgment of the district court.

AFFIRMED

PAMELA HARRIS, Circuit Judge, concurring:

I join the majority's opinion, which cogently explains the principles underlying Heck v. Humphrey, 512 U.S. 477 (1994), and the federalism concerns that counsel federal respect for state convictions. And I agree that Griffin's § 1983 suit cannot proceed consistent with Heck, at least unless and until his state conviction is invalidated.

As the majority explains, Griffin was on notice of the alleged Brady violation in his case at some point before August 4, 2011, the date on which the Baltimore City Circuit Court conducted a hearing on Griffin's Brady claim, and yet did not pursue federal habeas relief then or during the additional sixteen months he spent in custody. Maj. Op. at 11-12.* Our court has not precisely delineated the scope of the Heck "exception" it recognized in Wilson v. Johnson, 535 F.3d 262, 265-68 (4th Cir. 2008), and Covey v. Assessor of Ohio County, 777 F.3d 186, 197-98 & n.11 (4th Cir. 2015). But in a case like this, where the petitioner's full term of custody was more than long enough to allow for access to habeas relief, see Maj. Op. at 10, then I agree that the exception can apply only if the petitioner could not have "practicably sought habeas relief" during that period of custody, id. at 9-10 (quoting Covey, 777

---

* Citations to "Maj. Op." refer to the majority slip opinion.

17

F.3d at 197). And whether or not Griffin "practicably" could have sought habeas relief before he actually discovered the alleged Brady material, cf. Heck, 512 U.S. at 502 (Souter, J., concurring) (suggesting that Heck bar does not apply "to a person who discovers after his release from prison that . . . state officials deliberately withheld exculpatory material"), he has provided no explanation, in his pleadings or on appeal, as to why he could not have pursued habeas relief after that discovery and before the termination of his custody. See Maj. Op. at 12.

Finally, I echo the majority's clarification of an important point: Our holding expresses no view on the merits of Griffin's Brady claim and does not bar Griffin from seeking a remedy for any Brady violation he has suffered. Id. at 15-16. On Griffin's account, his allegations were substantial enough that the Baltimore City Circuit Court was prepared to order a new trial unless the government agreed to his release from prison after more than thirty years served. If Griffin's claim is indeed meritorious, then under Heck, it is the State of Maryland that has the authority and also the obligation to provide a remedy, or to invalidate Griffin's conviction and allow a federal court to do so under § 1983 and free of the Heck bar.

18