PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1227

CHRISTOPHER J. COVEY; LELA G. COVEY,

Plaintiffs - Appellants,

v.

ASSESSOR OF OHIO COUNTY; KATHIE HOFFMAN, Head Assessor; ROY
CREWS, Field Deputy; UNKNOWN ASSESSOR; OHIO COUNTY SHERIFF;
PATRICK BUTLER, Sheriff; ALEX ESPEJO, Corporal; RON WHITE,
Deputy; NELSON CROFT, Lieutenant; NICHOLE SEIFERT, Officer;
HNK, Unknown Officer; DLG, Unknown Officer; DEPARTMENT OF
JUSTICE - DEA; OHIO VALLEY DRUG TASK FORCE; OHIO COUNTY
ANIMAL SHELTER; DOUG MCCROSKY, Supervisor; UNKNOWN DOG
WARDENS (2); UNITED STATES OF AMERICA; ROBERT L. MANCHAS,
S.A,

Defendants - Appellees.

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling.  Frederick P. Stamp,
Jr., Senior District Judge.  (5:11-cv-00147-FPS-JES)

Argued:  October 28, 2014            Decided:  January 26, 2015

Before GREGORY, FLOYD, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.  Judge Floyd wrote
the opinion, in which Judge Gregory and Judge Thacker joined.

**ARGUED**: Sean Eric Andrussier, DUKE UNIVERSITY SCHOOL OF LAW,
Durham, North Carolina, for Appellants.  Thomas E. Buck, BAILEY
& WYANT, PLLC, Wheeling, West Virginia; Edward Himmelfarb,

UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Lee Murray Hall, JENKINS FENSTERMAKER, PLLC, Huntington, West Virginia, for Appellees. **ON BRIEF**: Shifali Baliga, Nicholas S. Brod, Erika M. Hyde, Students, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellants. Stuart F. Delery, Assistant Attorney General, William J. Ihlenfeld, II, United States Attorney, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees United States of America, United States Department of Justice, and Robert L. Manchas, S.A. Sarah A. Walling, JENKINS FENSTERMAKER, PLLC, Huntington, West Virginia, for Appellee Ohio Valley Drug Task Force. Bruce M. Clark, BAILEY & WYANT, PLLC, Wheeling, West Virginia, for Appellees Assessor of Ohio County, Kathie Hoffman, Head Assessor, Roy Crews, Field Deputy, Unknown Assessor, Ohio County Sheriff, Patrick Butler, Sheriff, Alex Espejo, Corporal, Ron White, Deputy, Nelson Croft, Lieutenant, Nichole Seifert, Officer, HNK, Unknown Officer, DLG, Unknown Officer, Ohio County Animal Shelter, Doug McCrosky, Supervisor, and Unknown Dog Wardens (2).

_____

FLOYD, Circuit Judge:

As the Supreme Court recently reaffirmed, the Fourth Amendment protects both homes and the "land immediately surrounding and associated" with homes, known as curtilage, from unreasonable government intrusions. Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013). In this civil suit, Cristopher and Lela Covey allege that several government officials violated their Fourth Amendment rights by entering curtilage--here, a walk-out basement patio area attached to their home--in search of marijuana. In response, the defendants claim (among other things) that their searches were reasonable because they entered the curtilage only after viewing Mr. Covey from a proper vantage beyond the home's curtilage. The district court ultimately accepted the defendants' characterization of the searches, and so dismissed the case. In doing so, the district court failed to construe the complaint in the light most favorable to the Coveys, as it must when ruling on a Rule 12(b)(6) motion to dismiss. Accordingly, we reverse and remand.

I.

The Coveys appeal the dismissal of their complaint for failure to state a claim. Accordingly, we recount the facts as alleged by the Coveys in their complaint, accepting as true all

3

well-pleaded facts.  Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014).

## A.

The Coveys live in a privately set home in the rural village of Valley Grove, West Virginia.  Trees surround their home and obstruct it from view from any public place.  For good measure, the couple has conspicuously posted two "No Trespassing" signs along the private driveway leading to their home.

A parking area for visitors is located outside the home's garage.  The parking area is connected to the home's front door by a paved walkway running from the parking area's left side.  A yard abuts the parking area's and home's right side.  A covered "walk-out basement patio" attached to the home is also located on the right side, several feet from the driveway.[1]  J.A. 13.

## B.

Around noon on October 21, 2009, Roy Crews, a field deputy for the tax assessor of Ohio County, West Virginia, entered the Coveys' property to collect data to assess the value of the

---

[1] In opposition to a defendant's motion to dismiss, the Coveys submitted pictures of this area to the district court. Two of those pictures are attached to this opinion as an appendix.

4

property for tax purposes.  Despite seeing the "No Trespassing" signs, Crews continued up the driveway to the Coveys' house.  He did so despite West Virginia's "standard visitation procedures," which provide that a tax data collector such as Crews "is not to enter" a property if it "is posted with 'No Trespassing' signs." W. Va. Code. R. § 189-2-3.5.

After finding no one at the home, Crews opened the front door and left a pamphlet inside.  He then searched the house's curtilage, including the walk-out basement patio.  There, Crews found marijuana.  After leaving the residence, Crews contacted the county sheriff, Patrick Butler, to report that he found marijuana at the Coveys' house.

C.

After receiving Crews's report, two law enforcement officers went to the Coveys' house to investigate: Corporal Alex Espejo of the Ohio County Sheriff's Office and DEA Special Agent Robert Manchas.  By the time they arrived at the house, Mr. Covey had returned.  According to the complaint, the officers "proceeded to park on the private driveway of [the Coveys'] residence in an area not normally used for visitor parking."  J.A. 13.  They then "proceed[ed] to enter curtilage, specifically the walk-out basement patio area."  Id.  "It was at that time that they came upon [Mr. Covey], who was working at

5

his workbench." Id. Although the complaint does not expressly state when the officers first saw Mr. Covey, construing the above allegations in his favor, it is reasonable to infer that they did not see him until after entering the curtilage.

The officers then seized Mr. Covey and escorted him to their car "parked off the driveway." J.A. 13-14. After detaining Mr. Covey, Corporal Espejo "re-enter[ed] the walk-out basement patio area and conducted a search of the area." J.A. 14. Likewise, Special Agent Manchas "re-entered [the] walk-out basement patio area, opened the basement doors, leaned inside and took photographs[,] and proceeded to seize evidence." Id.

After seizing Mr. Covey, Corporal Espejo, Special Agent Manchas, and other officers (who arrived later) waited for several hours to obtain a warrant to search the house. During that time, Mrs. Covey returned home, and an officer warned her that she would be arrested if she entered the house. She was, however, allowed to leave the premises. An hour after leaving, Mrs. Covey allegedly returned and "was promptly unreasonably seized" and interrogated. J.A. 15. After Corporal Espejo returned with a search warrant, the Coveys were arrested and jailed overnight.

On March 30, 2010, Mr. Covey pleaded guilty in state court to manufacturing marijuana. Pursuant to a plea agreement, the government agreed not to "initiate any prosecution it does or could have against [Mrs. Covey] for the events connected to or arising" from the couple's arrest. J.A. 44. On May 21, 2010, Mr. Covey was sentenced to home confinement for a period of not less than one year and not more than five years.

E.

On October 20, 2011, the Coveys brought suit pro se in the district court against several defendants, including Crews, Sheriff Butler, Corporal Espejo, Special Agent Manchas, the Assessor of Ohio County, the Ohio County Sheriff's Office, and the Department of Justice (DOJ). The claims against these defendants, brought under 42 U.S.C. § 1983 and Bivens,[2] alleged that they violated the Coveys' Fourth Amendment rights by conducting an unreasonable search.[3]

Between March and June 2012, each of the defendants moved to dismiss the case. The parties filed a number of documents in support of and in opposition to the defendants' motions. For

---

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[3] The Coveys also brought state-law causes of action that are not at issue in this appeal.

example, the DOJ attached Mr. Covey's plea agreement in the criminal case, among other documents. The Coveys did not object to the inclusion of material outside the complaint. Rather, they themselves also attached several documents to their opposition to the motions to dismiss, including 11 annotated pictures of their house and surrounding property, as well as the criminal complaint filed against Mr. Covey.[4]

In November 2012, a magistrate judge issued a report and recommendation (R&R) suggesting that the district court dismiss all federal claims and decline to exercise jurisdiction over the state-law claims. Two months later, the district judge "affirm[ed] and adopt[ed]" the R&R, while supplementing the R&R's statement of facts and reasoning. J.A. 66-84. The district court concluded that neither the field deputy nor any officer violated the Fourth Amendment. Thus, it did not address the other arguments made by the defendants in their motions to dismiss, including: (A) whether any defendant would be entitled to qualified immunity from suit, see infra Part III.B, and (B) whether the Heck[5] doctrine would bar the Coveys from bringing their claims, see infra Part III.C. This appeal followed.

---

[4] Although the district court did not expressly convert the motions into motions for summary judgment, the district court did rely on many of these documents in granting dismissal under Rule 12(b)(6).

[5] Heck v. Humphrey, 512 U.S. 477 (1994).

8

## II.

We review a district court's grant of a motion to dismiss de novo. Owens, 767 F.3d at 388. In deciding such a motion, we "'accept as true all of the factual allegations contained in the complaint,' and 'draw all reasonable inferences in favor of the plaintiff.'" Id. (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). To prevail, a plaintiff must "state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

## III.

We begin by addressing the Coveys' contention that the district court erred in finding that the complaint failed to plead plausible claims for violations of the Fourth Amendment. In the interest of judicial economy, we will also consider the defendants' legal arguments that the district court did not reach--namely, qualified immunity and whether Heck bars the Coveys' claims. We address each argument in turn.

9

A.

Although the district court correctly stated the governing Fourth Amendment legal framework, it incorrectly applied that framework to the complaint's allegations. We conclude that the complaint, properly construed, pleads plausible claims for violations of the Fourth Amendment.

The Fourth Amendment protects homes and the "land immediately surrounding and associated" with homes, known as curtilage, from unreasonable government intrusions. Oliver v. United States, 466 U.S. 170, 180 (1984). "This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'" Jardines, 133 S. Ct. at 1415 (quoting California v. Ciraolo, 476 U.S. 207, 213 (1986)). As with homes themselves, "probable cause, and not reasonable suspicion, is the appropriate standard for searches of the curtilage." Rogers v. Pendleton, 249 F.3d 279, 287 (4th Cir. 2001). "[W]e presume a warrantless search of curtilage to be unreasonable." Carman v. Carroll, 749 F.3d 192, 197 (3d Cir. 2014), rev'd on other grounds, 135 S. Ct. 348 (2014) (per curiam).

For purposes of their motions to dismiss, the defendants do not dispute that Crews intruded into the Coveys' home and curtilage, and the officers into the Coveys' curtilage. Instead, they assert similar defenses. Specifically, the

10

officers argue that their conduct falls within the knock-and-talk exception to the Fourth Amendment's warrant requirement. Crews contends that he reasonably intruded on the property to achieve certain governmental interests.  As set forth below, neither of these arguments is persuasive.

1.

We first address the officers' reliance on the so-called knock-and-talk exception to the Fourth Amendment's warrant requirement.  Under this exception, "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'"  Jardines, 133 S. Ct. at 1416 (quoting Kentucky v. King, 131 S. Ct. 1849, 1862 (2011)).  Thus, in the typical situation, there is an "implicit license . . . to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."  Id. at 1415.  An officer may also bypass the front door (or another entry point usually used by visitors) when circumstances reasonably indicate that the officer might find the homeowner elsewhere on the property.[6]

---

[6] For example, in Alvarez v. Montgomery County, police had received a complaint about an "underage drinking party."  147 F.3d 354, 356 (4th Cir. 1998).  Officers responded to notify the party house's homeowner about the complaint and ask that no one drive while intoxicated.  Id. at 358.  When the officers (Continued)

11

Pena v. Porter, 316 F. App'x 303, 313 (4th Cir. 2009) (citing Alvarez v. Montgomery Cnty., 147 F.3d 354, 356 (4th Cir. 1998)). Critically, however, the right to knock and talk does not entail a right to conduct a general investigation on a home's curtilage. See Rogers, 249 F.3d at 289.

Here, the officers claim that they were justified in bypassing the front door because they saw Mr. Covey on the walk-out basement patio area, thus giving them an implied invitation to approach him. If the officers first saw Mr. Covey from a non-curtilage area, they may well prevail under the knock-and-talk exception at summary judgment. But, properly construed in the Coveys' favor, the complaint alleges that the officers saw Mr. Covey only after they entered the curtilage. In responding to the defendants' motions to dismiss, the Coveys reiterated this point, stating that the "only way [the officers] could have observed [Mr. Covey] at his workbench or detected the smell of marijuana was if they were standing right on [the Coveys'] rear walkout patio area in [the] backyard." Doc. 48, at 16. Indeed,

---

arrived, they first went to the house's front stoop, where they noticed a sign that read "Party In Back" and had an arrow pointing toward the backyard. Id. at 357. The officers bypassed the front door and entered the backyard. Id. Because the officers had a legitimate purpose for entering the backyard--unconnected with a search of the premises--and a sign directed them to the backyard to find the homeowner, the knock-and-talk exception applied. Id. at 358-59.

12

nothing in the complaint suggests that the officers had reason to believe that Mr. Covey was in the patio area before proceeding there. Thus, applying the proper Rule 12(b)(6) standard, we find that the Coveys have plausibly alleged that the officers violated their Fourth Amendment rights by entering and searching the curtilage to the side of their house without a warrant.

In concluding otherwise, the district court appears to have accepted the officers' assertions that they saw Mr. Covey before they entered the curtilage. In doing so, the district court primarily relied on matters outside the complaint, including photographs of the Coveys' home and statements made by the officers in the criminal case. See J.A. 76 (stating that the photographs "make clear that the view of the backyard patio area [and Mr. Covey was] not impeded from the vantage point of the parking area near the garage of the home"); id. (noting that "the statements of Corporal Espejo submitted in the criminal complaint indicate that the officers were able to see Mr. Covey 'standing under the deck near the rear basement walk out door' upon their arrival"). At the 12(b)(6) stage, the court should have simply ignored this material.[7] In any event, when construed

---

[7] Subject to certain exceptions not relevant here, Rule 12(d) of the Federal Rules of Civil Procedure requires that a court treat a Rule 12(b)(6) motion as one for summary judgment
(Continued)

in the light most favorable to the Coveys, none of the extraneous material compels dismissal.

First, even assuming the district court properly considered the photographs of the Coveys' home, it erred in finding that they conclusively support the officers' narrative. The photographs do not reveal the officers' exact position and line of vision; Mr. Covey's exact position, his posture, and whether an object obstructed the officers' view of his body; or whether the officers could smell marijuana. As such, the photos do not expressly contradict the complaint's allegations that the officers only saw Mr. Covey after intruding into the curtilage. J.A. 13.

Corporal Espejo's statements in the criminal complaint also do not compel the conclusion that the officers could see

if "matters outside the pleadings are presented to and not excluded by the court." The district court did not convert any motion into one for summary judgment, but instead assessed all motions under Rule 12(b)(6). Although some of the parties' filings (such as the criminal complaint) could have been used for limited purposes (such as the fact that Mr. Covey was charged and convicted for manufacturing marijuana), any disputed testimony contained therein should have been ignored in favor of the complaint's allegations. See J.A. 33 (containing Corporal Espejo's narrative of his encounter with Mr. Covey, which the district court construed in a way that conflicts with the Coveys' allegations). Perhaps more simply, the court could have wholly ignored such attachments and relied exclusively on the complaint. See Fed. R. Civ. P. 12(d) (providing an option for a court to either (A) consider "matters outside the pleadings" and treat a motion to dismiss "as one for summary judgment" or (B) exclude the matters).

14

Mr. Covey from a proper vantage. Corporal Espejo simply stated that the officers saw Mr. Covey "upon arrival." See J.A. 33 ("Upon arrival officers observed [Mr. Covey] standing under the deck near the rear basement walk out door."). Because "upon" can mean "very soon after," the statement does not negate the possibility that the officers arrived, went straight to the curtilage, and only then saw Mr. Covey. Upon Definition, Dictionary.com, dictionary.reference.com/browse/upon. In finding otherwise, the district court ignored both the familiar Rule 12(b)(6) standard (requiring the court to construe the complaint in the light most favorable to the plaintiffs) and the well-settled rule that courts should construe pro se complaints liberally. Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010).

2.

We next address Crews's arguments that his intrusion did not violate the Fourth Amendment. The pertinent inquiry is whether Crews's actions were "unduly intrusive," based on the intrusion's methods and purpose. Widgren v. Maple Grove Twp., 429 F.3d 575, 583, 585 (6th Cir. 2005). This entails a "flexible standard, 'balancing the need to search against the invasion which the search entails.'" Turner v. Dammon, 848 F.2d 440, 445-46 (4th Cir. 1988) (quoting Camara v. Mun. Court of

15

City & Cnty. of S.F., 387 U.S. 523, 536-37 (1967)), abrogated on other grounds by Johnson v. Jones, 515 U.S. 304, 308-09 (1995). "[W]e should construe the Fourth Amendment 'in a manner which will conserve public interests as well as the interests and rights of individual citizens.'" Taylor v. Mich. Dep't of Natural Res., 502 F.3d 452, 457 (6th Cir. 2007) (quoting Kyllo v. United States, 533 U.S. 27, 40 (2001)).

As an initial matter, we agree with Crews that his violation of the State's administrative regulation (prohibiting data collectors from entering a property where a "No Trespassing" sign is posted) does not per se amount to a violation of the Fourth Amendment. See Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing Davis v. Scherer, 468 U.S. 183, 194 (1984)) (noting that a mere "failure to adhere to administrative regulations does not equate to a constitutional violation"). This argument is not dispositive, however, because Crews did more than merely ignore the "No Trespassing" signs.

The complaint alleges that Crews committed three distinct intrusions: (1) enter onto the Coveys' property; (2) enter into their house; and (3) search the curtilage. Even if the first intrusion was justified under the open-fields doctrine, see Jardines, 133 S. Ct. at 1414 (noting that the Fourth Amendment does not protect open fields from government investigations),

16

the other two were clearly not.  What began as a mere regulatory violation turned into an affront to the Coveys' constitutional rights when Crews entered the curtilage and the Coveys' home.

We do not suggest that the administrative regulations are irrelevant here, however.  To the contrary, they directly rebut Crews's argument that his intrusion was justified by the government's interest in collecting tax data.   Section 189-2-3.5 of the West Virginia Code of State Rules deems the citizen's privacy interest supreme when he or she posts a "No Trespassing" sign.  As a result, the governmental interest compelling Crews's actions was minimal.  In turn, the Coveys' privacy interest--the right not to have state actors unreasonably enter their home and rummage around their property--is significant.  Thus, the Coveys have pleaded a plausible claim that Crews conducted an unreasonable search of their home and curtilage.

In finding that Crews did not search anything for which the Coveys had an "objectively reasonable expectation of privacy," the R&R said:

> nothing unduly intrusive occurred: the assessor used ordinary methods to observe the house; there is no evidence he craned his neck or was straining to observe anything; and although Plaintiffs allege that he did open the door, it was only to drop a pamphlet inside and the marijuana he observed was in the backyard, not inside.

17

J.A. 59. Again, the district court applied the wrong standard at the motion-to-dismiss stage. The Coveys only needed to plead facts that constitute a plausible claim that Crews violated their Fourth Amendment rights, Owens, 767 F.3d at 388, not produce evidence that Crews "craned his neck or was straining to observe anything," J.A. 59. Indeed, in assuming that the "assessor used ordinary methods to observe the house" and that he entered the Coveys' house "only to drop a pamphlet inside," the district court made inferences favorable to Crews, not the Coveys. Id.

## B.

All the defendants also argue that they are entitled to qualified immunity. Although the district court did not rule on this issue and instead found that there was no Fourth Amendment violation in the first instance, the argument was raised below and is therefore properly before the Court. See Singleton v. Wulff, 428 U.S. 106, 121 (1976).

Qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (quoting Harlow v. Fitzgerald, 457 U.S.

18

800, 818 (1982)).  "To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'"  Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (quoting al-Kidd, 131 S. Ct. at 2078) (brackets and internal quotation marks omitted).

At this stage, we cannot conclude that the defendants are entitled to qualified immunity.  As to the police officers, the Supreme Court has held that no reasonable officer can "claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."  Groh v. Ramirez, 540 U.S. 551, 564 (2004).  As we have recognized for over a decade, "the curtilage is entitled to the same level of Fourth Amendment protection extended to the home."  Rogers, 249 F.3d at 287.  As alleged in the complaint, the officers violated clearly established law by proceeding directly to where they suspected marijuana would be found and without any reason to believe that they would find Mr. Covey there.  Thus, they are not entitled to qualified immunity at this stage.

The tax assessor's claim to qualified immunity is a closer call.  On one hand, "an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under § 1983," and the Supreme Court has "made clear that

19

determination of the scope of an official's authority depends upon an analysis of the statutes or regulations controlling the official's duties." In re Allen, 106 F.3d 582, 593, 595 (4th Cir. 1997) (citing Doe v. McMillan, 412 U.S. 306, 321-24 (1973), and Barr v. Matteo, 360 U.S. 564, 574-75 (1959)). Arguably, by entering into the curtilage and house despite the presence of "No Trespassing" signs and a regulation's explicit directive to leave, the tax assessor exceeded his discretionary authority and therefore should not be entitled to qualified immunity. On the other hand, the Supreme Court has repeatedly instructed that we should not "define clearly established law at a high level of generality." al-Kidd, 131 S. Ct. at 2084.

The parties have failed to offer any caselaw involving facts substantially similar to this case. Thus, it may be unwarranted to deny qualified immunity on the basis that "a reasonable [civil servant] would have known" that merely entering into the curtilage, in contravention to a regulatory directive, violated a clearly established right under the Constitution. Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014) (quoting Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006)). As already stated, however, the exact manner in which Crews searched the property is unknown and should be developed through discovery. Therefore, at this stage, Crews is not entitled to qualified immunity.

20

C.

Lastly, the defendants claim that the Coveys' § 1983 and Bivens[8] claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994). Although the district court did not rule on this issue, it was raised before the district court and has been preserved for consideration on appeal. See Singleton, 428 U.S. at 121.

We have imposed two requirements for Heck to bar a § 1983 or Bivens claim. First, "a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence." Heck, 512 U.S. at 487. Second, the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody. See Wilson v. Johnson, 535 F.3d 262, 267–68 (4th Cir. 2008); Bishop v. Cnty. of Macon, 484 F. App'x 753, 755 (4th Cir. 2012) (per curiam).

To the extent Mr. Covey's claims challenge the defendants' searches of his home and curtilage, we conclude that they do not necessarily imply the invalidity of his conviction and thus are not barred by Heck. As Heck itself recognizes, civil claims based on unreasonable searches do not necessarily imply that the

---

[8] Although Heck involved only a § 1983 claim, 512 U.S. at 479, we have construed Heck to apply equally to Bivens claims, Poston v. Shappert, 222 F. App'x 301, at *1 (4th Cir. 2007) (per curiam).

21

resulting criminal convictions were unlawful. Heck, 541 U.S. at 487 n.7. A valid conviction can still result after an improper search when doctrines such as independent source, inevitable discovery, or harmless error would alleviate the effect of the improper search. See id. Moreover, a civil-rights claim does not necessarily imply the invalidity of a conviction or sentence if (1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt. E.g., Lockett v. Ericson, 656 F.3d 892, 897 (9th Cir. 2011); Easterling v. Moeller, 334 F. App'x 22, 24 (7th Cir. 2009). This is the case here. Mr. Covey never contested his guilt. Nor did he ever seek to suppress the evidence underlying his conviction. Thus, relief under § 1983 or Bivens for the alleged illegal searches does not implicate the propriety of Mr. Covey's conviction, and Heck acts as no bar.

On the other hand, some of Mr. Covey's claims would imply the conviction's invalidity. For example, in a portion of the complaint, Mr. Covey alleges that he was falsely imprisoned and deprived of his liberty. J.A. 19-20. We construe this allegation as pertaining to Mr. Covey's period of home confinement. As to Mr. Covey, but not necessarily Mrs. Covey, see Bishop, 484 F. App'x at 756 (finding Heck inapplicable to the claims of a former prisoner's mother), relief for this

22

"injury" would necessarily imply the invalidity of Mr. Covey's conviction.[9] See Heck, 512 U.S. at 487 n.7 (stating that damages are recoverable for only an "actual, compensable injury," which "does not encompass the 'injury' of being convicted and imprisoned (until [the] conviction has been overturned)"). That conclusion alone, however, does not end our inquiry.

We have held once--in an unpublished opinion--that Heck bars a claim that implies the invalidity of a conviction or sentence even if the claimant is no longer in custody,[10] but only

---

[9] Indeed, at oral argument, appointed counsel for the Coveys conceded that "Mr. Covey cannot recover damages from the criminal proceeding" and said that the Coveys were not asking for such relief.

[10] From its inception, Heck has clearly applied to prisoners currently in custody. See Heck, 512 U.S. at 478 (stating the issue as "whether a state prisoner" can bring a challenge). The Supreme Court has not, however, definitively decided whether Heck ever applies if a claimant has served his or her sentence and is no longer in custody, as is the case here.

On one hand, a footnote in Heck suggests that its requirements apply even to claimants that are no longer in custody. See id. at 490 n.10 ("We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."). On the other hand, Justice Souter wrote a concurring opinion in Heck, joined by three justices, concluding just the opposite. Heck, 512 U.S. at 492, 502 (Souter, J., concurring in judgment). Later, in Spencer v. Kemna, four justices supported the "better view" in Justice Souter's concurrence in Spencer that a prisoner no longer in custody should be able to challenge the constitutionality of his or her conviction. 523 U.S. 1, 18-25 (1998). Although circuits are split on this issue, our Court follows the majority view--based on Judge Souter's analysis--that Heck does not apply to claimants no longer in custody and thus without access to habeas
(Continued)

if the claimant could have practicably sought habeas relief while in custody and failed to do so.[11]  Bishop, 484 F. App'x at 755.  At this stage, it is unclear whether Mr. Covey actually pursued or was practicably able to pursue habeas relief for his conviction.  Mr. Covey pleaded guilty on March 30, 2010, and was thereafter sentenced to home confinement for a period of not less than one year and no more than five years.  The Coveys filed this action on October 20, 2011, after Mr. Covey completed

---

relief, at least when the claimant is not responsible for failing to seek or limiting his own access to habeas relief. Wilson, 535 F.3d at 267–68; accord Cohen v. Longshore, 621 F.3d 1311, 1316–17 (10th Cir. 2010) (holding that Heck is inapplicable "at least where [an] inability [to obtain habeas relief] is not due to the petitioner's own lack of diligence" (emphasis added)).

[11] Because of inadequate briefing by the parties on this issue, we do not address whether a Heck bar properly applies to a person formerly in custody, even if the person could have practicably sought habeas relief.  We simply note that the binding precedent from the Supreme Court and in this Circuit does not clearly impose a "practicable diligence" requirement for former prisoners. See Spencer, 523 U.S. at 21 (Souter, J., concurring) (noting that Heck should not bar a claim if it would be "impossible as a matter of law" for a person to satisfy the favorable-termination requirement, without specifying whether it should apply if habeas relief was ever possible); Wilson, 535 F.3d at 268 (noting that "courts have taken a keen interest" in whether "a prisoner could have filed a habeas" petition, but not imposing a practicable-diligence requirement).  But see Burd v. Sessler, 702 F.3d 429, 436 (7th Cir. 2012) (declining to permit "a plaintiff who ignored his opportunity to seek collateral relief while incarcerated to skirt the Heck bar simply by waiting to bring a § 1983 claim until habeas is no longer available"); Guerrero v. Gates, 442 F.3d 697, 705 (9th Cir. 2003) (finding Heck applicable, despite the legal impossibility of pursuing habeas relief, because "failure timely to achieve habeas relief is self-imposed").

24

his term of home confinement. If Mr. Covey was unable to pursue habeas relief because of insufficient time or some other barrier, then Heck is wholly inapplicable to the Coveys' § 1983 and Bivens claims. Because we cannot make this determination on the record, we hold that Heck does not bar any of Mr. Covey's claims for purposes of the defendants' motions to dismiss. We leave it to the district court on remand to decide at summary judgment whether Heck bars any of Mr. Covey's claims.

IV.

In summary, the Coveys have sufficiently pleaded under § 1983 and Bivens that Crews, Corporal Espejo, and Special Agent Manchas violated clearly established law under the Fourth Amendment. On remand, the district court should consider whether Heck applies to Mr. Covey, based on his status as a person formerly in custody. If the district court properly rules that Heck applies despite Mr. Covey's status as such a person, then Heck bars Mr. Covey from seeking relief for injuries arising from his conviction and sentence, but not relief for a subset of the injuries alleged. The district court's orders are reversed. The case is remanded for further proceedings.

REVERSED AND REMANDED





26