**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-6923

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALLEN WENDELL MCNEIL,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:18-cr-00436-D-1; 5:21-cv-00384-D)

Argued:  September 25, 2024                          Decided:  January 22, 2025

Before GREGORY and HARRIS, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Gregory and Judge Gibney joined.

**ARGUED:**  Eva Grace Stieglitz Shell, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Andrew Kasper, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**  Erica Hashimoto, Director, Mary Conley, Student Counsel, Steven J. Salva, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

Allen Wendell McNeil pleaded guilty, without a plea agreement, to charges involving marijuana distribution and firearm possession. He now seeks relief under 28 U.S.C. § 2255, alleging that his trial counsel provided ineffective assistance in violation of his Sixth Amendment rights. Specifically, McNeil argues that his counsel failed him twice over: by not moving to suppress evidence derived from a search that purportedly violated his Fourth Amendment rights, and by ignoring his repeated requests to seek out a plea agreement with the government. The district court dismissed McNeil's § 2255 petition without an evidentiary hearing, and we granted McNeil certificates of appealability.

For the reasons given below, we conclude that McNeil's ineffective assistance claims cannot be resolved on the minimal record before us. Whether McNeil's counsel performed ineffectively can be determined conclusively only after further factual development. Accordingly, we vacate the district court's judgment and remand for an evidentiary hearing.

I.

A.

The events giving rise to this appeal occurred in September 2018, while police officers in Fayetteville, North Carolina, were patrolling the area around the home of Allen

2

Wendell McNeil.[1]  The officers observed a car with two occupants do a U-turn at the end of McNeil's street and stop in front of his house.  They continued to watch as a female passenger exited the car and approached the front of McNeil's house, but at that point, they briefly lost sight of her.  A few minutes later, the officers conducted a traffic stop of the car for an unspecified "regulatory violation," during which they questioned the car's two occupants about their visit to McNeil's home.  J.A. 121.  Receiving no "clear answer," the police searched the passenger and recovered a small bag of marijuana.  *Id.*

Without a warrant, the police then went to McNeil's house to conduct a "knock and talk."  J.A. 115.  At the front door, an officer – in his words – "made contact with [] two juvenile subjects" who were "inside by themselves."  J.A. 119.  McNeil's sworn § 2255 petition provides more detail, attesting that his "children answered the door and said [he] was not at home."  J.A. 92.  The officers nevertheless walked around to the back of McNeil's house and entered his backyard.  There, they approached what they described as a "small shed."  J.A. 121.  When they knocked on its door, McNeil answered and the officers "immediately observed a strong odor of raw [m]arijuana."  *Id.*

Based on that odor, the police detained McNeil, took a *Mirandized* statement from him, and conducted a protective sweep of the shed.  They then obtained a search warrant for McNeil's property.  All told, the police seized marijuana, money, and guns from

---

[1] Unless otherwise noted, the facts recounted here are taken from police reports and the warrant application for McNeil's home, attached to McNeil's § 2255 petition.

3

McNeil's property, which, together with McNeil's incriminating statements, led to the criminal charges in this case.

**B.**

McNeil was charged with three counts:  (1) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (2) possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and (3) possession of firearms after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1), 924.  Apart from a request to continue proceedings for thirty days, McNeil's counsel filed no motions. According to McNeil, his counsel also ignored his "numerous requests" to engage in plea negotiations on his behalf.  J.A. 89.

At his arraignment, McNeil pleaded guilty to all three charges without a plea agreement.  The district court imposed a sentence totaling 114 months (or nine-and-a-half years) in prison, within the advisory Sentencing Guidelines range.  We affirmed McNeil's criminal judgment and sentence on direct appeal.  *United States v. McNeil*, 828 F. App'x 918, 919 (4th Cir. 2020).

**C.**

That brings us to McNeil's timely filed, pro se § 2255 petition, the subject of this appeal.  As relevant here, McNeil raised two sets of Sixth Amendment claims of ineffective assistance of counsel.  The first related to the police officers' warrantless entry into his backyard, from which the officers were able to approach his shed.  According to McNeil, the police violated the Fourth Amendment when they entered his curtilage after being told he was not at home, and his trial counsel was ineffective for failing to file a motion to

4

suppress the evidence that resulted from that illegal intrusion. In the same vein, McNeil faulted his counsel for failing to investigate the traffic stop that led the police to approach his house and set in motion the warrantless search of his curtilage. McNeil's second claim involved his counsel's alleged failure to pursue a plea agreement with the prosecutor in his case, notwithstanding his repeated requests that she do so. According to McNeil, there was a "complete breakdown in attorney-client communications," with counsel refusing to engage with him at all. J.A. 110. McNeil moved for discovery and an evidentiary hearing to find out why his attorney did not attempt to negotiate a plea deal.[2]

The district court dismissed McNeil's § 2255 petition for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), without holding an evidentiary hearing. *McNeil v. United States*, No. 5:18-CR-436-D-1, 2022 WL 2980753 (E.D.N.C. July 27, 2022). With respect to counsel's failure to file a motion to suppress, the court applied the standard articulated in *Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 524–25 (4th Cir. 2016), under which an unfiled motion of "some substance" calls into question counsel's performance, and a motion that is "meritorious and likely [to be] granted" is required to show prejudice. *McNeil*, 2022 WL 2980753, at *4. Here, the court concluded, McNeil could make neither of those showings, because his Fourth Amendment claim was "frivolous." *Id.* (reasoning, in full, that "the knock and talk complied with the Fourth Amendment"). Accordingly, the

---

[2] McNeil also alleged that if the government had offered a plea agreement, his counsel never conveyed that offer to him, and McNeil sought discovery and an evidentiary hearing on that question, as well. Unless otherwise noted, we, like the district court, treat these related claims together for purposes of our opinion.

court held that counsel was not ineffective in failing to file a motion to suppress or in failing to investigate the traffic stop that preceded the entry onto McNeil's curtilage. *Id.*

As for counsel's alleged failure to seek a plea bargain with the government, the court ruled that McNeil's "sworn statements during his Rule 11 proceeding" – the hearing at which he entered his guilty plea – precluded his claim of ineffective assistance. *Id.* at *3. The court pointed to cases holding that statements under oath during a Rule 11 hearing typically bind a defendant and foreclose contradictory allegations in a subsequent § 2255 petition. *See id.* (citing, *e.g.*, *United States v. Moussaoui*, 591 F.3d 263, 299–300 (4th Cir. 2010)). And here, the court explained, "[a]t his Rule 11 hearing, while under oath, McNeil affirmed he was fully satisfied with counsel's services" and with his guilty plea, notwithstanding the absence of any plea agreement. *Id.* It followed, the court held, that this claim, too, failed on its face.

After dismissing McNeil's petition, the district court denied a certificate of appealability. *Id.* at *4. When McNeil timely appealed, this court granted certificates of appealability on McNeil's ineffective assistance claims related to the unfiled motion to suppress and to the alleged failure to seek out a plea bargain.[3]

---

[3] We appointed Professor Erica J. Hashimoto, Director of the Georgetown University Law Center Appellate Litigation Program, as counsel for McNeil. We appreciate the able assistance of Professor Hashimoto and the clinic staff and students.

## II.

We begin by setting out the legal framework that governs our review. On appeal from the denial of a § 2255 petition, we review the district court's legal conclusions de novo. *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021). When, as here, the district court denies relief without an evidentiary hearing, "the facts must be viewed in the light most favorable to the § 2255 movant" – here, McNeil – drawing all reasonable inferences in his favor. *Id.* (internal quotations omitted); *United States v. Paylor*, 88 F.4th 553, 565 (4th Cir. 2023).

McNeil's Sixth Amendment ineffective assistance of counsel claims are evaluated under the well-established framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*'s first prong, McNeil must show that his counsel's performance was constitutionally deficient, *id.* at 687, overcoming the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotations omitted). *Strickland*'s second prong requires McNeil to establish prejudice, in the form of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

As the district court recognized, we have explained before how the *Strickland* standard applies when the claimed deficiency is the failure to file a suppression motion. *See McNeil*, 2022 WL 2980753, at *4 (citing *Grueninger*, 813 F.3d at 524–25). Under the first prong, "it is enough to call into question counsel's performance that an unfiled motion would have had some substance," at which point we consider whether "reasonable strategic

7

reasons" nonetheless "warranted not filing the motion." *Grueninger*, 813 F.3d at 524–25 (cleaned up); *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021).[4]  To satisfy the prejudice prong, a petitioner must show that the unfiled suppression motion was "meritorious and likely would have been granted," and also a "reasonable probability that granting the motion would have affected the outcome" of the plea process.  *Grueninger*, 813 F.3d at 525; *Pressley*, 990 F.3d at 388; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (applying the *Strickland* prejudice standard in a guilty-plea context).

Finally, a district court is obligated to hold an evidentiary hearing on a petitioner's *Strickland* claim "[u]nless the motion and the files and records of the case conclusively

---

[4] The government suggests that we set aside *Grueninger* and *Pressley* and take a different approach to *Strickland*'s performance prong, under which counsel's performance could qualify as deficient only if "no competent attorney would think a motion to suppress would have failed."  Brief of United States at 11 (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)).  According to the government, asking only whether an unfiled suppression motion would have "some substance" runs afoul of the Supreme Court's emphasis on the need for "strict adherence" to *Strickland* in the guilty-plea context.  *See Premo*, 562 U.S. at 125.  On multiple counts, we must disagree.

First, of course, this panel is not free to discard *Grueninger* and *Pressley* – both decided after *Premo*, with the benefit of that case's discussion of the special deference due a *state* court's application of *Strickland* under 28 U.S.C. § 2254(d).  *See Premo*, 562 U.S. at 122–23.  Second, the government omits a key element from our analysis of the performance prong:  A petitioner must show not only that a suppression motion would have had "some substance," but also that no "reasonable strategic reasons warranted not filing the motion."  *Pressley*, 990 F.3d at 388.  There is no basis for the government's suggestion that *Grueninger* and *Pressley* fail to give the requisite deference to counsel's tactical decisions, or otherwise fall short of "strict adherence" to *Strickland*.  Finally, though *Grueninger* and *Pressley* involved petitioners who went to trial rather than pleading guilty, nothing in the reasoning of those cases turned on that fact, and we see no reason why it would.  Whether an unfiled suppression motion constitutes deficient performance can and should be evaluated as of the time counsel makes her decision, without regard to whether the defendant later pleads guilty or goes to trial.

show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Although "whether to hold a hearing ordinarily is a matter of district court discretion, a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." *Mayhew*, 995 F.3d at 176–77; *see Paylor*, 88 F.4th at 565.

## A.

We first address McNeil's claim that his counsel was ineffective for failing to file a motion to suppress the fruits of the police officers' entry into his backyard. The district court dismissed that claim on one ground: McNeil's underlying Fourth Amendment argument – that the police violated the Fourth Amendment when they entered his curtilage without a warrant – was "frivolous." *McNeil*, 2022 WL 2980753, at \*4. That meant, under *Strickland*'s performance prong, that the unfiled motion would not have had "some substance," *id.* (quoting *Grueninger*, 813 F.3d at 524–25), obviating the need for an inquiry into possible strategic reasons for failing to file. It also meant that McNeil could not meet the prejudice standard by showing that the motion was "meritorious" and likely to be granted. *Id.* The district court's dismissal, in other words, starts and ends with its conclusory ruling that the police officers' "knock and talk complied with the Fourth Amendment." *Id.*

We disagree. On this record, it cannot be shown "conclusively," *see* 28 U.S.C. § 2255(b), that the police did not violate McNeil's Fourth Amendment rights when they entered his backyard after their front-door "knock and talk" proved fruitless. Instead, accepting McNeil's allegations as true and viewing the record facts in the light most

9

favorable to McNeil, *see Pressley*, 990 F.3d at 387, a suppression motion based on McNeil's Fourth Amendment argument plainly would have had "some substance" and may well have proved meritorious. Under those circumstances, the district court was obliged to conduct an evidentiary hearing into McNeil's *Strickland* claim.

There appears to be no dispute that the police officers here obtained the evidence used to charge McNeil only after they entered his backyard, giving them access to the outbuilding and then to the odor of marijuana. Nor does the government dispute that McNeil's backyard was part of the "curtilage" around his home, as fully and robustly protected under the Fourth Amendment as the home itself. *See Florida v. Jardines*, 569 U.S. 1, 6 (2013). Finally, it is clear that the police intruded into McNeil's protected curtilage without a warrant – making that intrusion presumptively unreasonable under the Fourth Amendment. *See Collins v. Virginia*, 584 U.S. 586, 593 (2018).

To justify the warrantless entry into McNeil's backyard, the government relies solely on the knock-and-talk doctrine. Under that doctrine, a police officer without a warrant may enter a home's curtilage to "approach [the] home and knock" at the door, because "that is no more than any private citizen might do." *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 192 (4th Cir. 2015) (internal quotations omitted). A police officer, like any visitor, has an "implicit license" to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. Under this so-called exception to the warrant requirement, *see Covey*, 777 F.3d at 192, it appears the police officers acted reasonably and consistent with

10

their "implicit license" when they approached McNeil's front door and knocked, hoping to find and speak with McNeil.

The problem is what happened next, when the police went beyond McNeil's main entrance and into his backyard. As we have made clear, "the right to knock and talk does not entail a right to conduct a general investigation on a home's curtilage." *Covey*, 777 F.3d at 193. "There is no customary invitation to do *that*." *Jardines*, 569 U.S. at 9 (emphasis in original). Instead, the scope of the knock-and-talk exception can expand beyond the front door only in limited circumstances: "An officer may [] bypass the front door (or another entry point usually used by visitors) when circumstances reasonably indicate that the officer might find the homeowner elsewhere on the property." *Covey*, 777 F.3d at 193. On the record before us, construed most favorably to McNeil, we do not see how the government can meet that standard here.

First, the officers did not "bypass [McNeil's] front door" and proceed directly to some other part of his property. *Cf. Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 359 (4th Cir. 1998) (holding that police conducted a valid "knock and talk" when they went directly to the backyard "in light of [a] sign reading 'Party in Back'"); *United States v. Miller*, 809 F. App'x 131, 138 (4th Cir. 2020) (holding that police officers could "proceed [to the driveway] directly as part of their effort" to conduct a "knock and talk" after "they arrived and saw a group of people standing just beside the home"). Instead, the officers went first to McNeil's front door, and then, after their initial approach proved unsuccessful, advanced into his backyard. But *Jardines*'s "implied license" theory allows the police to do only what any private citizen might, *see* 569 U.S. at 8, which usually does not include roaming

11

around a neighbor's backyard because a knock at the front door has been unavailing. None of our cases applying *Jardines* has approved a curtilage entry *after* an unsuccessful stop at the front door, and it is not clear that the police officers here were entitled to this second bite at the apple.

And in any event, on the minimal record thus far assembled, we see nothing that would have "reasonably indicate[d]" to the officers that they would find McNeil in his backyard. *See Covey*, 777 F.3d at 193. On the contrary, according to McNeil's sworn § 2255 petition, when the police knocked on his door, they were told by his children that he was not at home – an indication that McNeil would *not* be found on the premises, and a response that would prompt any normal social visitor to depart rather than "trawl for evidence" in the backyard. *See Jardines*, 569 U.S. at 6–8. And the police reports are not inconsistent with this account, specifying only that the officers were met at the door by "two juveniles" who were "inside by themselves." J.A. 119.

Nor do the police reports provide any other basis for believing that McNeil could be found in the backyard. Although one report alludes to a "juvenile" behind the house, J.A. 119, it does not say that this "juvenile" – or anyone else – was seen in the backyard *before* the police entered. *See Covey*, 777 F.3d at 193 (holding that the knock-and-talk doctrine would permit police to proceed directly to a home's patio area only if officers saw the defendant on the patio *before* they entered the curtilage). Nor does it explain why the presence of a "juvenile" – age unspecified – would indicate that McNeil was nearby. Finally, the government makes much of the fact that the police had observed a car and passenger approach McNeil's house 30 minutes earlier. But the police did not see McNeil

12

himself at the house – indeed, they saw nothing of what happened when the passenger reached McNeil's door – and in any event, their reports gave no reason to think that McNeil could not have left the property in the intervening 30 minutes.

In short, on the record as it now stands, we cannot say that a suppression motion based on McNeil's Fourth Amendment claim would have been without substance. Instead, it appears that such a motion might well have been meritorious, because the police may well have exceeded the scope of the knock-and-talk doctrine when they entered McNeil's backyard after having been turned away at his front door. The district court therefore erred in dismissing McNeil's *Strickland* claim on the ground that a motion to suppress would have been frivolous.

That is not to say, to be clear, that McNeil necessarily will prevail on his claim. Whether McNeil is entitled to relief under *Strickland* can be "conclusively" determined only after an evidentiary hearing. *See* 28 U.S.C. § 2255(b). First, application of the knock-and-talk doctrine is highly fact-specific, and an evidentiary hearing will allow both parties to develop the record as to what exactly transpired at McNeil's home and what indications, if any, the officers may have had that they could find McNeil in his backyard. And while we have today viewed the relevant record facts and allegations in the light most favorable to McNeil, *see Mayhew*, 995 F.3d at 176, the government is entitled to contest any inferences or allegations it disputes.

Second, the potential merit of the unfiled suppression motion is not the only issue under *Strickland*. As we have explained, even if a motion to suppress would have had "some substance," counsel has "wide latitude" in deciding whether there are "reasonable

13

strategic reasons" to forgo filing. *See Pressley*, 990 F.3d at 388 (quoting *Grueninger*, 813 F.3d at 529). And the record as it now stands is "devoid of information regarding counsel's reasons, strategic or otherwise, for declining to file a motion to suppress." *Id.* at 389. Critical facts – whether McNeil "relayed to counsel the key facts on which he now relies" in his § 2255 petition, whether counsel's decision not to file a suppression motion was based on trial strategy – remain unknown. *Id.* at 389, 386. Without an evidentiary hearing to develop those facts, "we cannot determine whether, viewed objectively, counsel acted reasonably under the circumstances." *Id.* at 389.

Accordingly, we vacate the dismissal of McNeil's *Strickland* claim and remand for an evidentiary hearing on whether counsel was ineffective for failing to file a motion to suppress. Like the district court, we view as intertwined with this claim McNeil's related allegation that counsel improperly failed to investigate the traffic stop that preceded the officers' "knock and talk" at his house. *See McNeil*, 2022 WL 2980753, at *4 (dismissing both claims together on the ground that McNeil's underlying Fourth Amendment argument is frivolous). The passengers' account of what was said during that encounter, for instance, could have shed light – one way or the other – on whether the police had some reason to believe McNeil was on his property when they arrived at his front door, bearing on the potential merit of a motion to suppress. This allegation, too, should be taken up at the evidentiary hearing.

**B.**

Finally, we turn to McNeil's claim that his counsel was ineffective for failing to seek out a plea deal on his behalf, despite multiple requests that she do so. The district court

14

dismissed this claim, too, on one ground alone:  that McNeil's claim was foreclosed by his "sworn statements during his Rule 11 proceeding" affirming that he was "fully satisfied" with his counsel's services regarding his plea.  *McNeil*, 2022 WL 2980753, at *3.  And on appeal, the government likewise relies on that ground to support the dismissal of McNeil's claim without a hearing, arguing that McNeil's plea-related *Strickland* claims contradict his sworn Rule 11 statements and are therefore facially without merit.[5]  We cannot agree.

The problem here is not with the law relied on by the district court and the government.  It is indeed the case that "sworn statements made during a Rule 11 colloquy" bind a petitioner, in that a district court generally should dismiss, without an evidentiary hearing, a § 2255 petition that "necessarily relies on allegations that contradict [those] sworn statements."  *See United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).  The problem is with the factual predicate:  There is no record evidence that McNeil affirmed under oath that he was satisfied with his counsel's performance.

What the record shows is that McNeil was in a group of defendants at the start of his Rule 11 hearing – a group of unsworn defendants, which the district court initially advised collectively.  As part of that process, the district court questioned the group as a whole, instructing each defendant to raise his hand if he wished to answer "yes."  On the

---

[5] The government raises one other argument with respect to McNeil's allegation that his counsel failed to pass on to him any plea offer that she did negotiate, contending that this allegation, in particular, is too speculative to survive dismissal.  But that allegation is intertwined with McNeil's primary allegation – that his counsel refused his many requests to seek out a plea agreement – and an evidentiary hearing into one will cover the same ground as a hearing into the other.  Accordingly, we need not decide whether the failure-to-convey allegation, standing alone, would warrant an evidentiary hearing.

15

ninth question, the court asked if there was "any defendant who [wa]s not fully and completely satisfied with his or her lawyer's legal services," and no defendant raised his hand. That appears to be the sworn affirmation of satisfaction relied on by the district court, but as the record reflects, no sworn affirmation actually occurred.

An hour or so later, the district court did put McNeil under oath and inform him of the consequences if he lied. But during the actual sworn colloquy that followed, the district court failed to ask McNeil any questions about his satisfaction with his lawyer's performance, and McNeil offered up no assessment on his own. The district court did ask McNeil whether he "hear[d] and underst[ood]" the "questions that I asked the defendants as a group," to which McNeil responded "[y]es," J.A. 46 – an exchange the government now suggests had a kind of retroactive effect, turning McNeil's prior unsworn failure to raise his hand into a sworn affirmation of satisfaction with his lawyer. The government provides no support for that theory, and we cannot agree. We treat as binding a defendant's sworn and "solemn declaration[] in open court," *Lemaster*, 403 F.3d at 221 (internal quotations omitted), not an unsworn non-response to a group colloquy.

We do not question the discretion of district courts to conduct portions of their Rule 11 hearings by addressing groups of defendants together, and we do not fault the district court here for beginning with such a procedure. But the district court erred when it dismissed McNeil's plea-related *Strickland* claim on the basis of a sworn affirmation that simply did not occur. Because McNeil did not make a sworn statement of satisfaction with his lawyer's performance, and because his allegations are not otherwise "so palpably incredible, [] patently frivolous or false as to warrant summary dismissal," *see Paylor*, 88

16

F.4th at 565 (quoting *United States v. White*, 366 F.3d 291, 296 (4th Cir. 2004)), we vacate this dismissal, too, and remand for an evidentiary hearing into McNeil's *Strickland* claim.

## III.

For the reasons given above, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

17